SMITH, Appellant, vs. LOCKWOOD and others, Respondents.

*October 24 — November 17, 1891.*

*Promissory notes: Fraud:* Bona fide *purchaser.*

A promissory note for $648.26 had been obtained by the payee through fraud. The plaintiff claimed to be a *bona fide* purchaser before its maturity. The evidence — showing, among other things, that the sale, if any, to the plaintiff was made only ten days before the note became due, at a discount of over $50, and that the payee indorsed the note; that the plaintiff, who knew nothing, and did not inquire, as to the pecuniary responsibility of the makers, directed that there should be no protest to charge the payee as indorser; that a draft

for a partial payment was indorsed by the plaintiff to the payee; and that after the transfer the business with respect to the note was done by agents of the payee,— is *held* to sustain a finding by the trial court that the note was never in fact transferred to the plaintiff, and that the payee is still the owner thereof.

APPEAL from the Circuit Court for *Dodge* County.

This action is upon a promissory note dated September 1, 1883, made by the defendants, for $648.26, payable to the order of D. M. Osborne & Co. at the First National Bank of Beaver Dam, with interest. The note became due, by its terms, November 1, 1884. Three hundred dollars is indorsed thereon under date of November 3, 1884. The payee of the note is a corporation of New York and Illinois. It is alleged that the note was indorsed in blank by the payee and transferred to the plaintiff, for a valuable consideration, October 25, 1884. The note was given for an alleged liability of the defendant *Aaron Lockwood* to such corporation. The other defendants signed it as sureties for him.

In their answer the defendants admit the execution of the note, but deny that the plaintiff is the holder and owner thereof. They also allege that they were induced to execute the note by means of certain false and fraudulent representations made to them by an agent of the corporation as to the indebtedness of *Aaron Lockwood* to the corporation, when in fact he was not then so indebted in any sum whatever.

The facts are as follows: In 1883 *Aaron Lockwood* was the agent of such corporation for the sale of certain agricultural machines, binder twine and wire, in Beaver Dam and vicinity, under a written agreement containing stipulations (among others) to the effect that *Aaron* should be the conditional purchaser of the property handled by him for the corporation at a certain discount from schedule prices; that he should pay therefor in cash and in notes

indorsed by himself which he might receive from responsible parties purchasing machines, etc., for the price thereof. The contract is very long and, as printed in the abstract of the case, is quite unintelligible in many particulars. It is not necessary to attempt a further statement of its provisions.

It is averred in the answer, and the court found, in substance, that in June, 1884, the agent of the corporation presented to *Aaron Lockwood* his account therewith as the corporation claimed it to be, in which he was not credited with notes to the amount of nearly $1,500 held by the company against divers persons for machines, twine, and wire, which property was charged to *Aaron*, and for which he was liable to the corporation on his contract with it; that the agent of the corporation assured him that such notes remained unpaid, whereupon *Aaron*, together with the other defendants, believing such representations to be true, executed the note in suit and another note for the same sum, the agent promising that, as fast as collections were made on such customers' notes, the amounts so collected should be indorsed upon the notes of defendants; that the notes thus given by defendants were dated back to September 1, 1883, so that they would draw interest from that date; and that said customers' notes, to an amount exceeding the amount of the note in suit and such other note given therewith, had been collected by the same agent of the corporation before such last-mentioned notes were executed.

The court further found that the note in suit was never transferred to plaintiff, and that he is not the lawful holder and owner thereof, but that the corporation is the real owner thereof; that, at the time the same was given, the defendant *Aaron Lockwood* owed the corporation nothing, and that the note was obtained by means of the false and fraudulent representations aforesaid.

Judgment was thereupon ordered and duly entered for defendant, dismissing the complaint, with costs. The plaintiff appeals from the judgment.

*James J. Dick,* for the appellant.

For the respondents there was a brief by *Lander & Lander,* and oral argument by *Mr. H. W. Lander.*

LYON, J. The testimony is ample to support the finding of the court to the effect that the note in suit was given by defendants to cover the amount of certain customers' notes received for machinery, etc., which the agent of the D. M. Osborne & Co. corporation falsely represented were unpaid, and which defendants believed were unpaid, when in fact such notes had theretofore been fully paid, and the defendant *Aaron Lockwood* was not then indebted to such corporation in any sum whatever, all which the agents making such representations well knew. Indeed, the learned counsel for plaintiff scarcely questions the sufficiency of the proof to support such findings. He does maintain, however, that the proofs show conclusively that the note in suit was transferred to the plaintiff for a valuable consideration, before maturity thereof; that the plaintiff had no knowledge of the infirmity in the note; and hence the finding that it was never transferred to him, and that he is not the owner and holder thereof, is unsupported by the testimony. This is purely a question of fact, and is really the only question presented by this appeal for determination. It becomes necessary, therefore, to review the testimony on this subject.

The plaintiff and one J. H. Osborne, the secretary of the corporation, testified that on October 25, 1884, the corporation sold and indorsed to plaintiff thirty promissory notes, one of which was the note in suit, and that plaintiff paid therefor the face value thereof, exclusive of interest, amounting in all to $3,631.66. This was but ten days be-

fore the note in suit became due.    Thereafter, on the same day, the corporation sent defendants a notice by mail that the note would become due November 1st, but stated therein that it had been sold to plaintiff, and that the notice was sent for his accommodation.    Under date of October 24, 1884, the note was sent by one Towers, on behalf of plaintiff, to the First National Bank of Beaver Dam for collection, with a direction to the bank not to protest it. Towers was in the employ of the corporation in its collection department.    Plaintiff testified that he also employed him as his attorney in respect to this note, for convenience, although he was not an attorney at law.    Plaintiff also testified that he did not know defendants, and had never before heard of them.    It is not claimed that he made any inquiries, or that any information was given him, of the pecuniary responsibility of the defendants.    Yet, without any objection on his part, presumably with his knowledge, his authorized agent in his behalf waived protest of the note, and the same was not protested.    He thus deliberately relieved the indorser from liability, and threw away the only security he had of which he knew anything, and did so without taking the trouble to inquire whether the makers of the note were financially responsible.    He also did this without being asked by the indorser to do so.    It appears that the plaintiff is a business man.    According to the testimony he sells hardware, and purchases notes of the corporation and others for investment.    He is evidently thrifty and successful in business.    Yet he would have the court believe that he bought the note in suit, and immediately thereafter, without solicitation, released the only security for its payment upon which he knew he could rely. This circumstance alone might well shake the faith of the court in the truth of the theory that the plaintiff was an actual, *bona fide* purchaser of the note.

Moreover, the fact that the corporation sold this note to

plaintiff only ten days before it was due, at a discount of over $50, and at the same time became liable as indorser to pay the note, is not without significance on the question as to whether the transfer of the note was merely colorable and made for the purpose of cutting off defenses thereto. The discount is so unreasonable, and the whole transaction so unbusinesslike, that a court might well hesitate to say that it was a real sale of the note.

There are other features in the testimony, notably the facts of future interference by the agents of the corporation with the note, and with the proceeds of the payment of $300 made thereon at its maturity, which tend in the same direction. Thus one Granger, an agent of the corporation, withdrew the note from the bank, receipting therefor as the agent of plaintiff. The plaintiff testified, however, that he did not know Granger; that the latter was never his agent at any time, and that he did not authorize him to take the note from the bank. Yet, within ten days after the note was thus withdrawn, Towers wrote to the bank, in plaintiff's name, that "you were entirely correct in delivering this [the note] to Mr. Granger, as he has receipted to me for same." The question suggests itself, if the plaintiff really owned the note, why he or Towers should be satisfied with Granger's receipt for it. One would suppose that they would have reclaimed the note from the possession of the agent of the corporation, instead of taking his receipt therefor.

Again, the $300 paid on the note at maturity was forwarded by the bank to the plaintiff in the form of a draft on a bank in New York. This draft was indorsed by the plaintiff in blank, and then indorsed by the D. M. Osborne & Co. corporation to a bank in Boston. This shows clearly enough that the plaintiff indorsed the draft to the corporation. It does not appear that he ever received the proceeds of the draft, and the transaction is entirely unexplained. In

this connection another significant circumstance may be noticed. It appears that, when the plaintiff's deposition was being taken in his own behalf, he testified on his direct examination that nothing had been paid on the note to his knowledge, but subsequently, when on cross-examination he was asked whether his attorney had turned over to him any money collected on this note, J. H. Osborne called him from the room in which his deposition was being taken, and, after two or three minutes' conversation with Osborne, plaintiff returned, and answered that he found by examining the records that $300 was paid November 3, 1884. Two or three times during the taking of plaintiff's deposition, before answering a question put on his cross-examination, Osborne would motion him to step outside the room, or the plaintiff would ask Osborne to step out, and they would go outside and talk a short time, and then plaintiff would return and answer the question. This deposition was given May 29, 1885, and it is very apparent that the plaintiff, at that time, had no knowledge that anything had been paid on the note, and that he never received the proceeds of the draft by which the payment of $300 was remitted. The conduct of the plaintiff and of agents of the corporation in respect to the note and draft, after the alleged transfer of the note to plaintiff, raised a strong presumption that such transfer was merely colorable, and that the note remained the property of the corporation during all those transactions. We cannot say that the finding of the court in this behalf is not supported by the evidence.

*By the Court.*— The judgment of the circuit court is affirmed.