THE PEOPLE *ex rel.* F. R. Power *et al.*

*v.*

JAMES A. ROSE.

*Opinion filed December 20, 1905.*

1. TRADE NAMES—*when use of a trade name may be enjoined.* A company which has conducted business for many years under a name by which it has become well known may enjoin the use of such name as a trade name by other parties, whose intention is to deceive the public and thereby to fraudulently obtain business in-tended for the former company.

2. MANDAMUS—*when Secretary of State. cannot be compelled to issue certificate of incorporation.* The Secretary of State can not be compelled by *mandamus* to issue a certificate of incorpora-tion under a name the use of which by the corporation may be enjoined by an existing concern which has established its business under that name.

3. SAME—*mandamus will not issue in a doubtful case.* Man-damus will not issue to compel the Secretary of State to issue a certificate of incorporation under the name of an existing concern upon the ground that the latter is a foreign corporation which has not complied with the laws of Illinois, and is therefore not entitled to transact business in Illinois nor to protection in the use of its trade name, where the record leaves in doubt the question whether such concern is a foreign corporation or a mere partnership.

4. CORPORATIONS—*a joint stock company is not a corporation.* A joint stock company, although possessing many of the character-istics of a corporation, is a partnership, and not a corporation.

5. SAME—*provision of Criminal Code prohibiting use of corpo-rate name construed.* The provision of the Criminal Code impos-ing a penalty upon use of a corporate name by an ·unincorporated concern is intended to prevent the obtaining of fictitious credit, and the mere use of a corporate name, unattended with any fraudulent intentions or consequences, is not a violation of the statute.

6. SAME—*violation of statute against use of a corporate name merely involves payment of fine.* The use of a corporate name by an unincorporated company, even in a manner constituting a violation of the statute, can be attended with no other consequences than liability to pay the fine therein provided for, and does not invalidate contracts of the company, nor justify the Secretary of State in issuing a certificate of incorporation under its name to third parties intending to use the name to mislead the public into giving it business intended for the old company.

ORIGINAL petition for *mandamus.*

This is an original petition for *mandamus*, filed in this court on June 8, 1905, by the People upon the relation of F. R. Power, Patrick L. Touhy, F. G. Crary and F. A. Andrews against James A. Rose, Secretary of State, praying that a writ of *mandamus* issue, directed to said Rose, as Secretary of State, commanding him as hereinafter set forth. Rose, as Secretary of State, filed an answer to the petition. The petitioners or relators above named filed a demurrer to the answer of the Secretary of State. The case comes before this court upon the issue made by the demurrer to the answer.

The petitioners, who are of Chicago in Cook county, allege in their petition that on February 23, 1905, one of the petitioners, Patrick L. Touhy, and William H. Peacock and F. T. Donovan, acting as commissioners under the Corporation act of Illinois and the amendments thereto, filed in the office of the Secretary of State at Springfield a statement or application for a license to open books of subscription to the capital stock of a company to be known as or named "United States Express Company," with a capital stock of $2500.00 to be divided into twenty-five shares of $100.00 each; that the object, for which the company was to be formed, was to receive, carry and transport for hire packages large or small, and to do a general express business, the life of the company to be ninety-nine years with its principal office in Chicago; that the said statement or application was duly signed and acknowledged according to law by the commissioners,

and the fee of $30.00, as required by law, was on said day paid to the Secretary of State, who did on February 23, 1905, issue a license to said commissioners, authorizing them to open books of subscription to the capital stock of United States Express Company, which said license is signed by the Secretary of State, and sealed with the great seal of State, copy being attached to the petition; that the commissioners opened books of subscription for the capital stock of the United States Express Company, and the stock was all subscribed for, to-wit, Patrick L. Touhy, one share, $100.00; F. R. Power twenty-three shares, $2300.00; F. G. Crary, one share, $100.00; that thereafter the commissioners on March 6, 1905, at Chicago at two o'clock P. M., convened a meeting of the subscribers of stock, pursuant to notice required by law, for the purpose of electing a board of directors, etc., which notice was deposited in the post-office, properly addressed to each subscriber, ten days before the time fixed for the meeting; that the subscribers met at the time and place specified in the notice, and proceeded to elect directors, and that the following persons were duly elected for the term of one year: Patrick L. Touhy, F. R. Power, and F. A. Andrews; and that the post-office address of said company is at 171 Washington street in Chicago; that thereupon the commissioners made a report of their acts and doings as such to the Secretary of State, stating therein that they opened books of subscription; that the stock was fully subscribed, and giving a copy of said subscription, and that pursuant to notice, copy of which is set forth, the subscribers to the stock met and elected directors as above stated, and also stating in said report that the post-office address of said company was No. 171 Washington street, room 303, in Chicago, which said report was on March 6, 1905, sworn to before a notary public by said commissioners. The petition further states that the said report was mailed to the Secretary of State, and by him received at his office in Springfield on or about March 9, 1905; that there is no

company chartered under the laws of Illinois to do business in the name of United States Express Company, and that there is no foreign company or corporation, licensed to do business in Illinois in the name of United States Express Company; that, when the Secretary of State received said report, being in all respects as by law required, it was his legal duty to file the same in his office, and issue the final certificate of incorporation of said company; yet, that the said Rose, so being such Secretary of State, wholly refused and still refuses to file said report, and to issue the final certificate of incorporation of said company, as required by the statute; that the said Rose, as such Secretary, has returned said report to petitioners, and refused and refuses to complete the final organization of said company by receiving and filing said report, and issuing the final certificate of incorporation; by means whereof the petitioners are denied the right of becoming a corporation under the name of "United States Express Company," to which they are justly and lawfully entitled. Petitioners, therefore, pray a writ of *mandamus,* directed to said Rose, Secretary of State, commanding him forthwith to receive the said report of said commissioners, and to file said report, and to issue a certificate of the complete organization of said corporation, and that such further order may be entered in the premises as justice may require. The said petition was sworn to by Patrick L. Touhy, one of the commissioners, on April 18, 1905.

The answer of the respondent, the Secretary of State, was filed on June 14, 1905, and alleges that the court is without jurisdiction to hear and determine the matters set out in the petition; that respondent does not deny any of the allegations of fact in the petition, except that he has no knowledge, and therefore neither admits nor denies the allegations respecting the opening of books for subscription to the capital stock aforesaid, or whether the stock was fully subscribed, or whether a meeting of the subscribers was convened and held according to law, or whether a board of di-

219—4

rectors was elected as alleged. The answer denies that it is the legal duty of respondent to issue a final certificate of incorporation to said United States Express Company; and further denies that said petitioners, or any of them, have a right to incorporate under the laws of Illinois under the name of "United States Express Company." The answer further states that, when the license was issued out of respondent's office, it was done by one of his clerks, who supposed at the time that the parties, desiring to incorporate under the said name, were the same persons interested in the company hereinafter mentioned known as "The United States Express Company," and that no question was made at the time concerning the issuing of said license; that subsequently thereto respondent was informed that the parties, to whom the license had been issued, were in nowise interested in the United States Express Company hereinafter mentioned; "that there is now in existence a joint stock company, called 'United States Express Company,' organized and doing business under the common law and statute law of the State of New York, and that the United States Express Company here referred to will hereinafter be mentioned as the old United States Express Company;" that "said old United States Express Company was organized, as a joint stock association or joint stock company, on the 22d day of April, 1854, in the State of New York, and that said old United States Express Company thereupon entered upon the transaction of a general express business throughout the United States, and has been ever since engaged in said business, and is now engaged in the same in every State and territory of the United States, as well as in the dominion of Canada, and in foreign countries; that the said old United States Express Company carries on its business upon various railroads and steamship lines throughout the United States and Canada, and also in foreign countries; and that its business in a general way consists of the transporting and delivering of large and small packages of freight, merchan-

dise, valuable documents, papers and moneys, and that it has been engaged in said business continuously ever since the time of its organization as aforesaid; that its name is placed upon express cars on various railroads in the United States, and upon its wagons used to transport the merchandise, papers and moneys above referred to, and that said old United States Express Company is possessed of and operating many hundreds of wagons by means of thousands of horses owned by it, and that the name 'United States Express Company' is well known throughout all of the United States and foreign countries, as a company engaged in the transportation and delivery of merchandise, valuable packages, and money, for hire."

The answer further says that, subsequent to the issuance of said license and prior to the time of his receiving the report of the commissioners, he was informed and believes it to be true, that the use by any persons of said name, whether associated as incorporators or as co-partners or as individuals, would be a fraud upon the old United States Express Company; that his attention has been called to the fact that, in the month of March, 1883, there was filed in the United States Circuit Court for the Southern District of Illinois a certain bill of complaint, by Thomas C. Platt, a citizen of the State of New York and president of the United States Express Company (that is to say, the old United States Express Company), upon whose behalf he filed said bill, by virtue of the articles of association of said joint stock company and by virtue of the laws of the State of New York, against Oscar C. St. Clair and others, citizens of the State of Illinois, setting forth that the defendants claimed to have been organized under the laws of Illinois as the United States Express Company, and that the use by them of the name "United States Express Company" would be a fraud upon the rights of the old United States Express Company, and that the use of such name, even although a corporate name, was illegal, and said bill prayed that the defendants

might be forever enjoined and restrained from the use of the said name of United States Express Company; that, on May 31, 1884, a decree was entered in said cause as follows: "This cause came on to be heard at this term, and was argued by counsel; and thereupon, upon consideration thereof, it was ordered, adjudged and decreed as follows, viz.: That the organization of an express company by the defendants, Oscar C. St. Clair, Elon P. House, Charles A. Clowes, and United States Express Company, for the purpose of carrying on an express business, under the laws of the State of Illinois, and under the name of the 'United States Express Company,' is illegal and unauthorized by law; and that the conduct of an express business by said defendants, or either of them, under said name, 'United States Express Company,' is illegal and unauthorized by law; that the injunction heretofore granted in this cause on the 21st day of July, A. D. 1883, to restrain the said defendants, * * * their counselors, attorneys, solicitors, trustees and agents, and each and every one of them, from carrying out their purpose of organizing a corporation under the laws of the State of Illinois, under the name of the United States Express Company, or from transacting or carrying on an express business either in Illinois, or elsewhere, under the name of the United States Express Company, either as individuals or as a corporation, be, and the same is made hereby perpetual in the premises, according to the prayer of the bill. And it is further ordered, adjudged and decreed that the plaintiff recover costs against the defendants to be taxed by the clerk under the direction of the court."

The answer further says that the petitioners are not, and, prior to the filing of the said bill, were not, nor was any of them engaged in the express business; that the incorporation of said persons under the name "United States Express Company" is a new venture, and, so far as the objects of said incorporation relative to the doing of an express business are

concerned, it is a matter concerning the future and it is not intended that said corporation shall take over or continue any existing express business; that respondent then believed and now believes that petitioners had no right to become incorporated under the laws of Illinois as the United States Express Company, and for these reasons has refused and does refuse to issue a final certificate of incorporation to the said persons as "United States Express Company."

The demurrer, which was filed to the answer on June 17, 1905, is both general and special, and sets forth the following causes of demurrer to the answer: First: The answer admits all the allegations of fact in the petition, which it is necessary to prove; the license issued by the Secretary is under his hand and the great seal of the State of Illinois, and it is not claimed that any deception was practiced by plaintiffs in obtaining it; the sworn report of the commissioners is all the law requires as to the subscription of stock, election of directors, etc.; that the admitted facts make out a case for plaintiffs; that the new facts set up are not sufficient to bar the action; that the United States Express Company, organized under the laws of the State of New York, is either a corporation, or it is not a corporation; if it is a corporation it has not complied with the law of this State in relation to foreign corporations doing business in the State; that it is not licensed to do business in this State; and, if it is not a corporation, the court had no jurisdiction in the case of Thomas C. Platt, etc. *v.* Oscar St. Clair *et al.,* above described, in which an injunction was issued against the defendants therein on July 21, 1883; that it is only upon the ground that the United States Express Company, organized under the laws of New York, was a corporation, that the court could acquire jurisdiction in the above case, and, if it be held to be a corporation, the allegations in the bill are not sufficient to give the court jurisdiction, which it did not have; that the statute of our State, which requires foreign corporations to obtain a license from the Secretary of State,

in order to do business in this State, was enacted more than ten years after the decision in the cases referred to; that if it be a corporation, the United States Express Company of New York has no right to do business in this State, as it is not licensed to do so. *Second,* if said express company is not incorporated, then it has no right to use the name "United States Express Company" in the transaction of its business within the State of Illinois; that it is an offense against a certain section of the Criminal Code to assume and use a corporate name, not being incorporated; that such illegal use of the name would prevent the company from claiming protection in the use of the name, as a trade name; that it has no right to use the name in the State if not incorporated; that the name "United States Express Company" certainly imports a corporation.

A. L. FLANINGHAM, for relators:

The United States Express Company, organized under the laws of the State of New York, is an association of individuals authorized by law, and has been and is doing business as a legal entity or legal person under a corporate name. It has all the rights and privileges, and it uses and exercises all the franchise rights and privileges, of a corporation except that of a common seal, and it could use a seal if it desired to do so. In short, it is a foreign corporation which has not complied with the law of the State of Illinois in relation to foreign corporations doing business or wishing to do business within this State, and as such foreign corporation it has no rights, either legal or equitable, within the State of Illinois. *Paul* v. *Virginia,* 8 Wall. 168; *Philadelphia Fire Ass.* v. *New York,* 119 U. S. 110; *Mining Co.* v. *Pennsylvania,* 125 id. 186; *Coal Co.* v. *Hamblen,* 23 Fed. Rep. 225.

The laws of the State of New York have no force or effect within the State of Illinois, and said express company, until it has complied with the laws of our State, has no lawful existence within the State. *Railroad Co.* v. *Wheeler,*

66 U. S. 286; *Bridge Co.* v. *Adams County,* 88 Ill. 615; *Bridge Co.* v. *Wooley,* 78 Ky. 523.

It is only by comity of the State that a foreign corporation can be admitted to do business within the State. *Carroll* v. *East St. Louis,* 67 Ill. 568; *Walker* v. *Springfield,* 94 id. 364.

A foreign company or corporation cannot come into the State and contest the right of a domestic corporation to use the same name as used by the foreign company. *Hazelton Boiler Co.* v. *Hazelton Tripod Boiler Co.* 142 Ill. 494; *Coal Co.* v. *Hamblen,* 23 Fed. Rep. 225.

If the United States Express Company organized under the laws of the State of New York is not a corporation, then it has no right to use the name "United States Express Company" in the transaction of business within the State of Illinois. The Criminal Code of this State makes it an offense to assume and use a corporate name in transacting business, not being incorporated. Hurd's Stat. 1903, par. 220, p. 657.

The wrongful assumption and use of a corporate name will deprive the company of the right to protection of its name as a trade name. *Clark* v. *Iron Works,* 44 Ill. App. 510.

Any fraud or deception practiced by the company in the use of its name, as against the public, will prevent it from claiming protection of its name as a trade name. *Medicine Co.* v. *Wood,* 108 U. S. 218; *Holzapfel's Composition Co.* v. *American Co.* 183 id. 1; *Pearline Manf. Co.* v. *Chemical Co.* 118 Fed. Rep. 103; *Koehler* v. *Saunder,* 122 N. Y. 65; *Sterling Silk Manf. Co.* v. *Sterling Silk Co.* 59 N. J. Eq. 394.

W. H. STEAD, Attorney General, and J. R. CUSTER, for respondent:

Before the court will issue the writ of *mandamus* it must not only appear that it is the duty of the respondent to issue the final certificate, but that it is the right of the relators to have it issued; also, the writ will not be issued if it would fail to accomplish a good purpose or have a beneficial effect.

*Watch Case Co.* v. *Pearson,* 140 Ill. 434; *People* v. *Lieb,* 85 id. 484; *People* v. *Ketchum,* 72 id. 212; *Cristman* v. *Peck,* 90 id. 150.

The United States Express Company can, through its president, and probably through one or more of its members on behalf of all, maintain suits for injunction. 1 Daniell's Ch. 190, note; 1 Foster's Fed. Pr. (3d ed.) secs. 46, 47, 107-109, 111; Story's Eq. Pl. (9th ed.) secs. 107-109, 111; *Stewart* v. *Dunham,* 115 U. S. 61; *Belmont Nail Co.* v. *Columbia, etc.* 46 Fed. Rep. 336; *American Steel Co.* v. *Unions,* 90 id. 605.

The fact that the express company is not a corporation does not prevent it from using the name "United States Express Company," notwithstanding section 220 of the Criminal Code. The acts or contracts of persons offending are not made void by the statute. It is not the mere use of the name which is prohibited. *Edgerton* v. *Preston,* 15 Ill. App. 23; *Brewing Co.* v. *Vinterum,* 67 id. 559; *Imperial Manf. Co.* v. *Schwartz,* 105 id. 525; Collyer on Partnership, sec. 159.

It is within the right and power of the United States Express Company to restrain the use of its name by others. *Lane* v. *Brothers,* 120 Ga. 355; *Aiello* v. *Montecalfe,* 21 R. I. 496; *Rudolph* v. *Southern Beneficial League,* 23 Abbott's N. C. 199; *Black Rabbit Ass.* v. *Munday,* 21 id. 99; *International Committee Y. W. C. A.* v. *Y. W. C. A.* 194 Ill. 194; *Peck Bros. & Co.* v. *Peck Bros.* 113 Fed. Rep. 291; *McLean* v. *Fleming,* 96 U. S. 245; Hopkins on Unfair Trade, 108; *Celluloid Manf. Co.* v. *Cellonite Manf. Co.* 32 Fed. Rep. 94; *McGlynn* v. *Post,* 21 Abbott's N. C. 97.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

By the demurrer to the answer the allegations of fact in the answer are admitted to be true. Under these allegations, as set forth in the statement preceding this opinion, the com-

pany, referred to in the answer as the "old United States Express Company" would have the right and power to restrain by injunction the use of its name by petitioners herein, or by the new corporation, which they propose to form.

In *International Com. Y. W. C. A.* v. *Y. W. C. A.* 194 Ill. 194, we held that, although generic terms or mere descriptive words are the common property of the public, and not ordinarily susceptible of appropriation by an individual, yet an injunction may issue to restrain the use of such terms, or words, at the suit of one, who has already adopted them, where the evidence shows a fraudulent design, and that the public will be misled. In cases referred to and quoted from in the *Y. W. C. A. case, supra,* it was held that, although certain plaintiffs had no exclusive right to the words "Conveyance Company," or "London Conveyance Company," or any other words, they had a right to call upon a court of chancery to restrain the defendant from fraudulently using precisely the same words and devices, which they had taken for the purpose of distinguishing their property, and thereby depriving them of the fair profits of their business by attracting custom on false representation, that carriages, really belonging to the defendant, belonged, and were under the management of the plaintiff. It was there held that, although there was no property in the words, "The Guinea Coal Company," yet it was a fraud on a person, who had an established trade and carried it on under a given name, that some other person should assume the same name with a slight alteration, as "The Pall Mall Guinea Coal Company," in such a way as to induce persons to deal with him in the belief that they are dealing with the person, who has given a reputation to the name; in other words, "that it is a fraud on the part of a defendant to set up business under such a designation as is calculated to lead, and does lead, other people to suppose that his business is the business of another person."

In *McLean* v. *Fleming,* 96 U. S. 245, it is said: "Nor is it necessary, in order to give a right to an injunction, that a specific trade-mark should be infringed, but it is sufficient that the court is satisfied that there was an intent on the part of the respondent to palm off his goods as the goods of the complainant." The same doctrine is announced in the following cases, to-wit: *Lane* v. *Brothers, etc.* 120 Ga. 355; *Aiello* v. *Montecalfe,* 21 R. I. 496; *Rudolph* v. *Southern Beneficial League,* 23 Abbott's N. C. 199.

In the case at bar, the old United States Express Company had had an established business in the United States, and in foreign countries, for more than fifty years, when the petitioners made application to the Secretary of State to organize a corporation in Illinois under the same name, to-wit, the "United States Express Company." It appears from the allegations in the answer that the incorporation of the new company, under the same name as the old company, would be a fraud upon the old company, as being an attempt to take away from it a part of its business, and to deceive the public into the belief that, when dealing with the new company, they were, as matter of fact, dealing with the old company. Indeed, the answer specifically alleges that the action, proposed to be taken by the commissioners, would be a fraud upon the old company, and the demurrer to the answer admits this allegation.

It being true, then, that the old company would be entitled to file a bill in chancery to enjoin the new corporation, proposed to be organized, from doing business under the same name as the old company, the writ of *mandamus* will not issue to compel the Secretary of State to issue a certificate of organization to the new company. The writ of *mandamus* will not be issued, if its issuance would fail to accomplish a good purpose, or to have a beneficial effect. "The writ is not granted as a matter of absolute right, and where it can be seen that it cannot accomplish any good purpose, or that it will fail to have a beneficial effect, it will be

denied." (*Cristman* v. *Peck,* 90 Ill. 150; *People* v. *Lieb,*
85 id. 484; *Illinois Watch Case Co.* v. *Pearson,* 140 id.
423). It is difficult to see how the issuance of the writ in
this case could accomplish any good purpose, or have any
beneficial effect, if the new corporation, proposed to be or-
ganized, could be enjoined from using the name of the old
company, and doing business under that name.

It is contended, on the part of the petitioners, that the
old United States Express Company is a foreign corpora-
tion, organized under the laws of New York, and that, as
such foreign corporation, it cannot be admitted to do busi-
ness in Illinois, except by comity of the latter State. It is
furthermore insisted that the old United States Express
Company cannot do business in this State, or maintain any
suit in the courts of this State, because it has not obtained a
license so to do business in Illinois from the Secretary of
State of Illinois. Many decisions are referred to by counsel
in support of this position. The argument proceeds upon the
supposition that the old United States Express Company is
a foreign corporation. It does not appear, however, clearly,
upon this record, that it is a foreign corporation.

The answer avers "that there is now in existence a joint
stock company called United States Express Company, or-
ganized and doing business under the common law and stat-
ute law of the State of New York." The demurrer to the
answer admits this allegation to be true. For the purposes
of this case, therefore, the old United States Express Com-
pany is to be regarded as a joint stock company, organized
and doing business under the common law, as well as the
statute law of the State of New York. A joint stock com-
pany is defined in the text books to be "an association of
individuals for purposes of profit, possessing a common capi-
tal, which is divided into shares, of which each member pos-
sesses one or more, and which are transferable by the owner.
These associations, formed for business purposes, were at
common law, and, as a general rule, still are considered

merely as partnerships, and their rights and liabilities are in the main governed by the same rules and principles, which regulate commercial partnerships." (17 Am. & Eng. Ency. of Law,—2d ed.—pp. 636, 637). While it is true, that many companies, called joint stock companies, have many of the essential characteristics of a corporation, yet there is a distinction between such companies and regularly organized corporations, so-called. In 17 Am. & Eng. Ency. of Law,—2d ed.—p. 638, it is said: "In respect to their formation there is a broad distinction between a corporation, technically so called, which always owes its existence to the sovereign power of the State, and a joint stock company, which, being essentially a partnership, is brought into being by the contract of its members *inter sese.*" Counsel refer to cases in other States, and in the Federal courts, holding that joint stock companies possess many of the characteristics of corporations, but the definition, which characterizes them as partnerships, has been recognized as correct, if not actually adopted, by the decisions of the Illinois courts.

In *Robbins* v. *Butler,* 24 Ill. 387, this court, speaking through Mr. Justice BREESE, said (p. 426) : "These stock companies are nothing more than partnerships, and every member of the company is liable for the debts of the concern, no matter what the private arrangements among themselves may be, if they have not shifted their liability in the very mode pointed out in the articles of association." (See also *Pettis* v. *Atkins,* 60 Ill. 454; *Hodgson* v. *Baldwin,* 65 id. 532). In *Wadsworth* v. *Duncan,* 164 Ill. 360, this court speaking through Mr. Justice PHILLIPS, again said, endorsing the doctrine announced in *Robbins* v. *Butler, supra,* as follows: "The members of a joint stock association are partners, and each member is liable for the debts of the association, unless he has shifted his liability in the very mode pointed out in the articles of association."

In view of what has been said, it is not altogether certain that the old express company, which is admitted here

to be a joint stock company, is such a foreign corporation, as is required by our statute to file a copy of its charter, or articles of incorporation, or certificate of incorporation, in the office of the Secretary of State. The statute, imposing the requirement in question upon a foreign corporation desiring to do business in this State, speaks of "every company incorporated for the purposes of gain under the laws of any other State," etc., and, in the subsequent part of the section, which uses the words just quoted, the company, so incorporated, is referred to as "such corporation," and not as "such company;" and it would seem to be the proper construction of the statute in question, (4 Starr & Cur. Ann. Stat.— sup. ed.—p. 310), that it refers to regularly organized corporations, rather than to joint stock companies. This is so, because, as has already been stated, the corporation, technically so. called, owes its existence to the sovereign power of the State, while the joint stock company, being merely a partnership, is brought into being by contract of its members. The statutory requirement embraces foreign corporations, rather than joint stock companies, because the former owe their existence to the power of a foreign State; and statutes in relation to requirements, imposed upon foreign corporations, concern the creatures of the foreign States, and not the creatures, which are brought into being by the mere contract of parties. In the case at bar, the provisions of the instrument, or articles of organization, under which the old United States Express Company acts, and does business, are not anywhere set forth in the present record. We are unable to say what the terms of its articles of association are, as they are not set forth in the pleadings. But whether the view, thus taken of the character of the old United States Express Company, is correct or not, it is certainly a matter of doubt whether it is a corporation, or a mere partnership. Under these circumstances the writ of *mandamus* will not be issued. "The writ is never granted in doubtful cases, nor unless the party asking it has a clear right."

(High on Ex. Legal Rem. sec. 9; *Illinois Watch Case Co. v. Pearson, supra.*)

It is furthermore contended by the petitioners herein that, if the old United States Express Company is not a corporation, then it had no right to use the name, "United States Express Company," in the transaction of business in the State of Illinois. This contention is based upon the alleged ground that the Criminal Code of this State makes it an offense to assume and use a corporate name in transacting business, not being incorporated. The provision of the Criminal Code thus referred to reads in part as follows: "If any company, association or person puts forth any sign or advertisement, and therein assumes, for the purpose of soliciting business, a corporate name, not being incorporated, * * * such company, association or person shall be fined not less than $10.00, nor more than $200.00, and a like sum for each day he or it shall continue to offend, after having been once fined." (1 Starr & Curt. Ann. Stat.—2d ed.— p. 1332, sec. 368).

The section of the Criminal Code above quoted was passed in March, 1869, either in the above or a more stringent form. The answer shows that the old United States Express Company was organized in 1854, fifteen years before this statute was passed, and had been doing business throughout the country for many years before its passage. During the years prior to its passage when it was thus transacting business, it cannot be said that it was not doing business in good faith, or that it was doing business with any intention of violating the law in question, because the law in question was not then in existence. It is to be observed, however, that the statute does not denounce the assuming of a corporate name, but the putting forth of a sign or advertisement, and thereby assuming a corporate name for the purpose of soliciting business. It cannot be said here that the old company in question put forth its corporate name for any such purpose. "What the legislature had in view

in enacting this section of the Criminal Code manifestly was to prevent persons from obtaining a fictitious credit by advertising themselves as being a corporation when they were not incorporated." (*Edgerton* v. *Preston,* 15 Ill. App. 23). Under the allegations of the answer herein, which are admitted to be true by the demurrer, it cannot be said that the old company here under consideration was in any way advertising itself as a corporation for the purpose of obtaining a fictitious credit. Before the criminal statute was passed, it already had a credit, which was not fictitious, so far as the present record shows. The fraud, which the criminal statute in question seeks to punish or to prevent, is the use of a name in such a way as to deceive the public, and it is the deception or improper use of the name, and not the name itself, which constitutes such fraud. "It is not, therefore, enough to show the mere use of the name to make out a violation of the statute; there must be some evidence, at least, tending to show such use as the statute forbids." (*Imperial Manf. Co.* v. *Schwartz,* 105 Ill. App. 525).

It is furthermore to be observed that this criminal statute does not make contracts, made by persons guilty of the offense prohibited, invalid, but merely provides that such persons shall be liable to pay a certain fine. It would appear, therefore, that a violation of the statute can be attended with no other consequences than merely the infliction of the penalty therein prescribed. (*Edgerton* v. *Preston, supra.*)

For the reasons above stated, we are of the opinion that the Secretary of State properly refused to issue a certificate of complete organization of the new corporation proposed to be organized by the petitioners, and that the prayer of the petition herein for a *mandamus* must be and is denied.

*Writ denied.*