UNION STATE BANK OF AMERY and another, Appellants,
vs. SAVORD, Respondent.

*February 11—March 10, 1925.*

*Bills and notes: Holder in due course: Evidence: Sufficiency: Burden of proof.*

1. In an action on a promissory note, the consideration for which
   had failed, the evidence is *held* to sustain a verdict of the jury
   to the effect that the plaintiff bank was not a *bona fide* holder
   in due course as defined by sec. 116.57, Stats., in view of
   sec. 116.64, relative to the burden of proof in cases where the
   title of the person who negotiated the note was defective, and
   of the unusual manner of purchase, the large discount, and
   the failure to protest the note to charge indorsers.  p. 371.
2. The question whether the holder of a note took it in due
   course and in good faith is generally for the jury, depending
   on inferences to be drawn from all the circumstances.  p. 373.

APPEAL from a judgment of the circuit court for Rusk
county: JAMES WICKHAM, Circuit Judge. *Affirmed.*

This was an action on the promissory note given by the
defendant to one A. E. Whitney, and by said Whitney in-
dorsed to one G. W. Beach, who negotiated the note before
maturity to the plaintiffs.  The defendant answers and
alleges in substance that the note was given for a considera-
tion subsequent which failed, and the note thereupon became
void, and that the plaintiffs did not purchase the note in due
course, but on the contrary in bad faith.  The case was tried
before the court and a jury.  A special verdict was ren-
dered to the effect that the amount due on the note was
$2,790.50; that the note was negotiated in breach of faith,
and under such circumstances as amounted to fraud; that
the plaintiffs did not purchase the note in good faith; that
the plaintiffs did not purchase the note without notice of
any infirmity in the instrument or defect in the title of
the person negotiating it; that the plaintiffs did not pur-
chase the note in the usual course of business; that the de-
fendant received nothing of value as consideration for the
note; and that the defendant, after the plaintiffs purchased

the note, demanded of A. E. Whitney that the note be returned and canceled as the contract provided, because of the failure to procure a patent. Upon this verdict the court entered judgment dismissing the complaint, after the plaintiffs had asked to have the answers in the verdict changed and had moved for judgment in their behalf.

The plaintiffs appeal and assign as error that the court erred in refusing to direct a verdict in plaintiffs' favor; in submitting any questions to the jury; in refusing to change answers to questions as requested by appellants; and in denying appellants' motion for judgment notwithstanding the verdict.

For the appellants there was a brief by *McGill & Williams* of Ladysmith, and oral argument by *L. E. McGill.*

*T. M. Thomas* of Ladysmith, for the respondent.

Crownhart, J.   There is no question in this case but that the promissory note involved was negotiated for value before due. The defense relies on his claim that the plaintiffs are not holders in due course. The statute, sec. 116.57, provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value.

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

"(5) That he took it in the usual course of business."

The note was complete and regular on its face; it was not due when negotiated and had not previously been dishonored; it was taken for value, but it is contended that it was not taken in good faith, and the jury so found. It is undisputed that the plaintiffs had no actual notice of any infirmity

in the note or defect in the title of the person negotiating it, but it is claimed that the plaintiffs had knowledge of facts and circumstances which should have put them on their guard, and which in legal effect amounted to notice of infirmity or defect in the title. And it is further contended by the defendant that the plaintiffs did not take the note in the usual course of business.

The statute, sec. 116.64, further provides:

"Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

The jury found on ample evidence justifying their verdict that the title of Whitney and Beach, who negotiated the note, was defective, and hence the burden was on the plaintiffs to prove that they acquired the title as holders in due course. This burden the plaintiffs assumed, and the real question before us is whether or not there was any credible evidence to sustain the verdict of the jury. It is said in 3 Ruling Case Law, pp. 1040, 1041, in such case the holder

"must disclose the facts and circumstances under which he acquired the paper. It is ordinarily to be expected, in these cases, that the purchaser will testify to his good faith and want of notice, and the defendant is compelled to rely upon circumstantial evidence to rebut such showing. Whether the plaintiff has sufficiently satisfied the burden resting upon him, and made good his claim to be an innocent purchaser, is therefore a question for the jury, save in those instances where the testimony is not only consistent with the good faith of such purchase, but is such that no fair-minded person can draw any other inference therefrom. A categorical denial of notice or knowledge is something which in many, if not in most, instances cannot be opposed by direct proof; and the credibility of the witnesses, their interest in the case, the reasonableness or unreasonableness of their statements, the time, place, and manner of the transaction, its

conformity to or its departure from the ordinary methods of business, and all the other facts and circumstances which, though of slight moment in themselves, yet, when taken together, give character and color to the purchase under inquiry, constitute a showing which the court cannot properly pass upon as a matter of law. Observing this principle, it has frequently been held that a denial of notice by the purchaser, though he be uncontradicted by any other witness, is not sufficient to justify a directed verdict in his favor." See *Hodge v. Smith,* 130 Wis. 326, 110 N. W. 192.

Applying the principles thus enunciated to the facts in this case, we find that the appellants are two state banks located in the village of Amery, in Polk county. Vincent Christenson is the cashier and managing officer of the appellant *Union State Bank,* and Paul C. Amundson is the president and managing officer of the *Farmers & Merchants State Bank.* On the 16th of June, 1921, the defendant, *George Savord,* gave his promissory note to A. E. Whitney for $2,500, with interest at six per cent., payable on or before six months from date, in consideration of a contract in writing whereby *Savord* was to have the exclusive sale in the state of Michigan of an advertising desk to be manufactured by Whitney. By the terms of another written contract of even date, Whitney agreed to procure a patent on said desk, failing which said first contract should become null and void and the note and contract should be returned to *Savord.* Whitney failed to procure the patent, and *Savord* demanded the return of his contract and note. In the meantime Whitney, who was associated in some way with Beach, had indorsed the note, and Beach presented the note to Christenson of the *Union State Bank* for sale. Christenson understood that Whitney was joint owner of the note with Beach. Christenson was not acquainted with the financial standing of *Savord,* but knew that he did his banking through the Amundson bank, and thereupon consulted with Amundson with reference to the purchase of

the note, and Amundson advised him that *Savord* was financially sound, and entered into an agreement with Christenson whereby the two agreed to purchase the note jointly, and did so on the 9th of September, 1921, for the sum of $2,250, which amount was placed to the credit of Beach in the *Union State Bank*. Beach soon thereafter checked out the greater portion of this money, and thereafter his bank account was inconsiderable in said bank.

Amundson advanced to Christenson $1,187.50 as his share of the purchase price of the note, and also gave his note to the *Union State Bank* for the sum of $1,200, on agreement with Christenson that the same was not to be paid but held by the bank until the *Savord* note was paid, when it should be returned to Amundson. This note was discounted at the *Union State Bank* and the proceeds credited to Beach. Christenson was not well acquainted with Whitney but had seen him around Amery, and he testified that he knew Whitney by sight and had talked with him. He did not have a very good opinion of him from his appearance. He knew Whitney was selling Texas lands. Beach had no financial rating, and no credit was given to his indorsement.

*Savord* lived at Ladysmith, in Rusk county, but had a highway contract near Amery, kept an account with the Amundson bank, and was frequently in the bank about this time. Neither Christenson nor Amundson made any inquiry of *Savord* about the note, or notified him of the purchase of the note until the same became due.

Beach lived in Amery and had some small business there, but his business was not such as to explain the possession of the *Savord* note. The method of purchasing the *Savord* note was not the usual method of such transactions in either bank. Amundson testified that—

"It saved some written agreement between the two banks. It was as safe one way as the other. It is not my custom in

buying notes to give my personal note and personal check in order to save bookkeeping and records appearing on the books of the bank. This is the only time that I remember of handling a matter in just exactly this way."

Amery is a town of about 1,200 people. Amundson had seen Beach around there for a year and a half or two years, but did not know him and hardly spoke to him on the street. Beach was not around in the business activities of the town. Amundson had never seen Whitney, and did not know who he was. He did not know Whitney's signature. He was pretty well acquainted with *Savord* and visited with him several times and knew he was on the road job that summer. *Savord* borrowed money from him, and always paid his bills promptly. When Amundson's bank loaned *Savord* money, Amundson inquired about when payment on his highway contract would become due, and *Savord* would furnish the information. Amundson kept the *Savord* note and turned it in to his bank and was credited with $2,500 by the bank. Amundson deposited $1,200 with his bank to offset the note given to the *Union State Bank*. The *Savord* note was carried as a separate account in the bank and marked "*George Savord* note." Amundson testified:

"It is held in escrow until this matter is settled. It is not subject to check. It is entered as a savings account pending the outcome of this suit. The entry was made September 9, 1921."

When the note came due *Savord* was notified, but the note was not protested to hold the indorsers. Amundson testified that he was relying on *Savord* to pay the note. He said:

"He was the only one of the parties that I knew. I did not think it was worth while to hold the indorsers. I did not know anything about them. . . . The full purchase price of the note came out of the funds of the bank, and the bank became the owner of the note subject to this agreement with Mr. Christenson."

Amundson further testified:

"At the time we purchased the note Beach was carrying his account with the *Union State Bank,* and the maker of the note, *Mr. Savord,* was dealing with our bank. Mr. Christenson asked me what I knew about *Savord* and I told him the experience we had and the dealings, and he asked if a note of $2,500 could be collected against him and said he had a chance to buy a note at a discount of $250. He asked if I would go in on the deal for one half the commission and be equally responsible for the note. I told him we would do that, and that is the way we bought it."

The *Union State Bank* started a suit on this note prior to the present action. This, Christenson testified, was a mistake of the attorneys and the suit was afterwards dismissed.

The record discloses that *Savord* was working on a state highway contract close to Amery and he was in Amery every few days. He frequently called at the Amundson bank. Inquiry could easily have been made by Amundson with reference to the note. Neither of the bank officials knew anything favorable about Whitney, and put no financial reliance on Beach. They purchased the note from them at a discount, including interest, of about $285. They carried the account in their respective banks in a peculiar and significant manner. It is quite clear that there was evidence from which the jury could find that the banks did not take the note in the usual or ordinary course of business. It was wholly an unusual and peculiar transaction so far as the banks were concerned. It would seem that Amundson and Christenson were guarantors of payment of the note to their respective banks. What the fact was in that respect is not clear, but the entries on the bank records are unusual. The rule with reference to such a transaction is stated as follows:

"Every one must conduct himself honestly in respect to the antecedent parties when he takes negotiable paper, in order to acquire a title which will shield him against prior equities. While he is not obliged to make inquiries, he must not wilfully shut his eyes to the means of knowledge which

he knows are at hand . . . for the reason that such conduct, whether equivalent to notice or not, would be plenary evidence of bad faith." 8 Corp. Jur. 505, 506.

In *Smith v. Lockwood*, 80 Wis. 491, 50 N. W. 401, the court treated as significant facts that a promissory note of $648.26, when negotiated, was discounted to the amount of $50 only ten days before the note became due, and that there was no protest to charge the indorser. So here, this note of $2,500 was discounted about $285 when it had only about three months to run before due, and when due the plaintiff bankers did not protest the note to charge the indorsers.

In *First Nat. Bank v. Court*, 183 Wis. 203, 197 N. W. 798, this court said:

"Had the defendant shown in the evidence, for instance, that the plaintiff purchased this note for a sum considerably less than the face value of the note, that would have been an incident of bad faith and would have created a jury issue."

There is a wide diversity of opinion in the courts as to the effect on the question of good faith when the paper is taken at less than its face, but there is abundance of authority to the effect that a large discount from the face of commercial paper is an indication of bad faith on the part of the buyer, which a jury may consider. The rule is stated in 3 Ruling Case Law, 1055, with citation of authorities, as follows:

"Where negotiable paper signed by a person considered to be solvent is sold at a very large discount, such circumstance alone is sufficient to require the purchaser to make inquiry as to the genuineness thereof, and if he fails to make such inquiry he is not to be deemed a *bona fide* purchaser, and in any case the fact that the paper was purchased at a discount may, in connection with other circumstances, rebut the presumption that a holder is a due-course holder."

The circumstances surrounding the purchase of the note were such as to indicate that the note had come into the hands of Beach and Whitney under suspicious circumstances. The note was due in something like three months

from the time it was purchased, and it was purchased for $285 less than the face value. This was a large discount considering the short time the note had to run before due. Amundson was well acquainted with the defendant *Savord* and saw him frequently. He knew that he was working on the highway a couple of miles distant from Amery and he had the opportunity to find out whether there was any defect in the note. He did not exercise this opportunity, but on the contrary he shut his eyes as to any information with reference to the liability of *Savord* on the note. Neither party placed any reliance on the indorsers. They took the chance that they were purchasing the note before due, and thus *Savord* would be prevented from denying liability. It would seem that Amundson did not exercise good faith toward *Savord,* who was his customer. He had no faith in the sellers of the note. Neither of them was in business which would be likely to put him lawfully in possession of such a large sum. The books of the bank showing the account with reference to the note were out of the ordinary. They did not show the facts of the transaction and were calculated to deceive the bank examiners. The whole transaction bears the earmarks of a desire not to make inquiry for fear that they might learn something unfavorable to the title to the paper. We think the jury were warranted in finding in favor of the defendant, as they did.

We realize the necessity of maintaining the negotiability of mercantile paper by upholding the ordinary commercial transactions therein. But the statute has placed the burden of proof upon the holder of the paper which has been negotiated in breach of faith, to show that he is a holder in due course—that he took it in good faith. Good faith, like fraud, is not susceptible of exact definition. It depends upon inferences to be drawn from all the circumstances, and is generally a question for the jury.

*By the Court.*—The judgment of the circuit court is affirmed.