WAKEM, Appellant, vs. SCHNEIDER and others, Respondents.

*March 9—April 5, 1927.*

*Bills and notes: Trade acceptances: Recitals as to origin: Purchase at discount: Use of name corporate in form by drawer: Holder in due course.*

1. A provision on the face of a trade acceptance, "the obligation of the acceptor hereof arises out of the purchase of goods from the drawer," does not impose on the purchaser of the acceptance the duty of inquiring as to the contract between the acceptor and the drawer.   p. 531.
2. The sale of trade acceptances of the face value of $696.50 at a discount of $69.50 is not such a discount as to constitute constructive notice of possible infirmity of title or to place on the purchaser the duty of making further examination.   p. 531.
3. The fact that the individual drawer of trade acceptances conducted transactions under the name of the "Aristocrat Manufacturing & Distributing Company," which company was non-existent, does not affect the rights of a holder in good faith of such trade acceptances under sec. 343.722, Stats. Wis., or under the law of Illinois.   p. 531.
4. The evidence in this case is *held* to show that plaintiff was a holder in good faith of trade acceptances given in payment for dish-washing machines, irrespective of whether plaintiff had the burden of proof under secs. 116.57 and 116.64, Stats. p. 532.

APPEAL from a judgment of the circuit court for Sheboygan county: CHESTER A. FOWLER, Judge.   *Reversed.*

The plaintiff is president of a general merchandise warehouse company in Chicago, and for many years has been engaged in discounting trade paper on his personal account. February 24, 1925, at the request of one M. W. Johnson, whom plaintiff had known for about a year and with whom he had at least one business transaction, he purchased three trade acceptances aggregating $696.50 purporting to have

been executed at Chicago February 20, 1925, and each of substantially the following form:

"To P. H. Schneider & Son Company,
    "Sheboygan, Wisconsin.

"60, (90), (120), days after date, pay to the order of ourselves at Chicago, Illinois, the sum of two hundred and thirty-two and 50/100 ($232.50). Accepted at Sheboygan on 2/20, 1925.

"The obligation of the acceptor hereof arises out of the purchase of goods from the drawer.

"Payable through Bank of Sheboygan.

"Firm—P. H. Schneider & Son Co.,

"By Phil. A. Schneider, authorized buyer.
    (Signed) "ARISTOCRAT MFG. & DISTRIBUTING CO.
    "M. W. JOHNSON."

Each was indorsed on the back, "Aristocrat Mfg. & Distributing Co.—M. W. Johnson."

Plaintiff paid Johnson $626.85, a discount of $69.65.

The plaintiff, through his private secretary who attended to such matters for him, knew that Johnson as an individual was doing business in the name of the Aristocrat Manufacturing & Distributing Company; that he was selling dish-washing machines; lived at a hotel on Irving Park boulevard in Chicago; had desk space at West Jackson boulevard; and also that the defendants had a satisfactory rating in Dun and Bradstreet.

A special exclusive sales agency agreement was made with defendants and including the delivery at Sheboygan to them of seven dish-washing machines with a quoted retail price of $995, less thirty per cent. dealers' profit, making the above net amount of $696.50. It was also agreed that the seller would put on a special sale campaign to help in disposing of them.

The machines were so delivered and set up; a man was sent to conduct such a sale campaign who hired several

women to assist. After two weeks or longer of efforts in that regard, no sales having been made, the campaign ceased. The machines remained on defendants' hands, and they attempted thereafter to return them to the seller in accordance with certain terms of the contract.

The first trade acceptance fell due while the campaign was on and defendants paid it. They refused to pay the others and this suit was brought.

Upon the trial a special verdict was answered as follows:

"(1) Did Johnson negotiate the trade acceptances in suit under circumstances such as to amount to a fraud? *A.* Yes.

"(2) Did the plaintiff take the trade acceptances in good faith? *A.* No."

Upon respective motions by the parties judgment was granted in favor of the defendants, and plaintiff appeals.

For the appellant there was a brief by *Benfey & Benfey* of Sheboygan, and oral argument by *Theo. Benfey.*

For the respondents there was a brief by *Collins & Collins* of Sheboygan, and oral argument by *W. B. Collins.*

ESCHWEILER, J. Because we are satisfied that under the testimony in this case the plaintiff was a holder in good faith of the trade acceptances and that there is not sufficient support for the jury's answer in the negative to the second question of the special verdict, the plaintiff is entitled to judgment in his favor irrespective of whether or not the first question of the special verdict was properly answered.

Assuming that there was a defect in the title of the person who negotiated the instrument in question here and that the burden was therefore, under sec. 116.64, Stats., placed upon the plaintiff to prove that he was a holder in due course as defined in sec. 116.57, still the evidence permits no other warrantable conclusion than that plaintiff's title was good. The plaintiff showed that he did all, as a purchaser of commercial paper, that, as a matter of law, was required.

That the form of commercial paper here involved and

designated as trade acceptances are negotiable instruments and within and under the statutes concerning such, is not here questioned nor could it well be. *McCornick & Co. v. Gem State Oil & P. Co.* 38 Idaho, 470, 222 Pac. 286, 34 A. L. R. 867.

It is not claimed by respondents that there was any duty on the plaintiff to inquire as to the contract between the seller and the buyer of the goods for which such paper was given though such was mentioned on the face of the acceptances. If any such inquiry had been made it would have shown a legitimate contract. That the seller did not thereafter fully comply with the conditions required by the contract did not of course affect its validity at the time of its making.

The discount in the sale of these papers was not such as to create any constructive notice of possible infirmity of title or to place any duty on the plaintiff to make further examination. *Tiefenthaler v. Biersach,* 182 Wis. 245, 196 N. W. 211.

Importance is attached by respondents to the use by Johnson, who alone transacted all the business, of the name "Aristocrat Manufacturing & Distributing Company" in the various papers. It being conceded that there is no such incorporation, reliance is placed upon the Illinois statutes prohibiting, under penalty, the assuming a corporate name for the purpose of soliciting business, and which statute may be found with decisions thereon in 14 Corp. Jur. 333.

In Illinois decisions it has been held that the only penalty for doing business under an assumed corporate name is the one expressly provided for in this statute, and that such violation does not make void a contract made by an individual using a corporate name (*Turnes v. Johnson,* 179 Ill. App. 32; *People ex rel. Power v. Rose,* 219 Ill. 46, 63, 76 N. E. 42); and it was so held as to a promissory note in *First Nat. Bank v. Cox,* 140 Ill. App. 98, 102.

Sec. 343.722 (sec. 4470*b*), Stats., cited by respondents

providing a penalty for the unlawful use of a corporate name with intent to obtain credit, such name not disclosing the real name or names of one or more of the persons engaged in said business, without first filing in the office of the register of deeds of the county where the principal place of business may be the specified statement with reference to the same, can have no possible application to this case.

The plaintiff here having neither actual nor constructive notice of any infirmity of title or fraud in the original transaction, if either of such there were, was entitled, as a holder in due course, to judgment in his favor. *First Nat. Bank v. Court,* 183 Wis. 203, 213, 197 N. W. 798. There was here no such out-of-the-ordinary course of business or unusual transaction as was presented in the case relied upon by defendants of *Union State Bank v. Savord,* 186 Wis. 365, 202 N. W. 688.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for plaintiff.