ROSENBERG, Appellant, vs. GILSON, Respondent.

*September 11—October 9, 1951.*

436

For the appellant there was a brief by *Cohen, Parins & Cherney*, of Green Bay, and oral argument by *Meyer M. Cohen* and *Colburn G. Cherney*.

For the respondent there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *J. Robert Kaftan.*

GEHL, J. For the purposes of this appeal we need not consider the question whether the record supports the finding of the trial court that Merar obtained the note from the defendant by fraud. We shall assume that it does. The sole question is whether the plaintiff is the holder of the note in due course.

Defendant relies upon the provisions of sec. 116.64, Stats., which read as follows:

> *"Burden of proof as to title.* Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

The circumstances were such as to make it impossible for plaintiff to offer any affirmative proof that he acquired title to the note in due course except by showing his possession thereof, that it was properly indorsed to him, that he acquired title before maturity, for value, and without evidence of infirmity or defect of title in Merar. Having made such proof, all without dispute, he has met the burden imposed by the statute unless rebutting evidence permits the inference that he acted in bad faith in failing to make further inquiry. *First Nat. Bank v. Court,* 183 Wis. 203, 197 N. W. 798.

The trial court cited the following facts and circumstances as permitting the inference that plaintiff was not a holder in due course:

(1) That the plaintiff took the note without investigating except to ascertain that it had been taken in the sale of Merar's business. There is nothing in the record which permits the inference that the plaintiff had reason to suspect that there was anything irregular about the sale. On the contrary, it probably appeared to plaintiff that, since Merar had reduced his original indebtedness from $3,500 to $1,900 the business must have had some value, and that the purchase price paid by defendant, $3,000, was not any evidence that he had been overreached.

(2) That the plaintiff, when he took the note and chattel mortgage did not inquire as to the financial integrity or

standing of defendant. In view of the fact that defendant had paid $1,500 in cash and had given a $1,500 chattel mortgage on property for which he had paid a total of $3,000 there does not appear to us to be any reason why plaintiff should have made such investigation. The fact that defendant had paid $1,500 in cash would of itself have warranted plaintiff in believing that collection of the $1,500 note secured by a chattel mortgage in that amount and covering property for which defendant had paid $3,000 would not be too difficult.

(3) That plaintiff made no effort to "defend the price" paid by Gilson in the purchase of the business. In that connection we refer to the fact that the price paid by Gilson for the business is less than that paid by Merar in his purchase thereof.

(4) That plaintiff made no effort to foreclose the chattel mortgage. Our attention has been called to no rule which would prevent the plaintiff from bringing action upon the note and we see no reason why suspicion should be aroused by his act in doing so. He had a choice of remedies and might well have considered that as a matter of good business, action upon the note was preferable to foreclosure.

(5) That the plaintiff paid the balance of Merar's note at the bank instead of discounting Gilson's note. We find nothing in plaintiff's choice in that respect which would arouse any suspicion or suggest the inference that he was influenced thereto by any knowledge as to the nature of the Merar-Gilson transaction.

The trial judge made no reference to the fact that the blood relationship existing between plaintiff and Merar was a circumstance tending to increase the burden imposed by statute upon plaintiff, but defendant makes a point of it in his brief. In the absence of any proof that plaintiff participated in the Merar-Gilson transaction or that he had notice of any fraudulent act on the part of Merar, and in view of the fact that it is not shown that plaintiff had knowledge even of the fact

that a sale was being negotiated prior to the time he took the note, we do not consider that bad faith may be inferred from the fact that plaintiff and Merar are related. It seems that the relationship existing between plaintiff and Merar would make the former even less likely to suspect that his grandson had acquired the note by means of fraud, and that under those circumstances one situated as plaintiff was would quite naturally be less vigilant than he might be in taking a note from a stranger. The record discloses nothing in the previous conduct of Merar which might have caused his grandfather to suspect that he had overreached the defendant.

We do not consider that the circumstances in this case were such as to make it bad faith for plaintiff not to have made any inquiry beyond that which he did. Nowhere is it pointed out to us that plaintiff had any knowledge or information which would have put him on inquiry as to the character of the transaction between Merar and Gilson.

The provisions of sec. 116.61, Stats., seem to have been overlooked. They are:

*"Actual knowledge of infirmity necessary to notice.* To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Considering the construction to be placed upon this statute, the United States supreme court has said:

". . . under the Wisconsin statute notice of facts tending to put a cautious buyer upon inquiry will not defeat the title of a holder of negotiable paper, if in truth there was neither actual knowledge of an infirmity nor conscious joinder in a fraud." *Marine Bank v. Kalt-Zimmers Co.* 293 U. S. 357, 364, 55 Sup. Ct. 226, 79 L. Ed. 427.

The plaintiff in the instant case, "having neither actual nor constructive notice of any infirmity of title or fraud in the

original transaction, . . . was entitled, as a holder in due course, to judgment in his favor." *Wakem v. Schneider,* 192 Wis. 528, 532, 213 N. W. 328.

*By the Court.*—Judgment reversed with directions to enter judgment in favor of the plaintiff and against the defendant as demanded in the complaint.

FRITZ, C. J., dissents.