Manufacturers' National Bank of Racine vs. Newell and another.

---

MANUFACTURERS' NATIONAL BANK OF RACINE, Appellant, vs. NEWELL and another, Respondents.

*March 1 — March 27, 1888.*

*Negotiable instruments: Note discounted by bank:* Bona fide *purchaser: Constructive notice of infirmity.*

1. A bank discounted a note for a company and credited it with the amount, the credit subsequently increasing, so that, at the time of suit on the note, the bank had parted with nothing of value for it. *Held,* that the bank was not a *bona fide* purchaser for value.
2. Where a note is given to a company, constructive notice of infirmity therein to the officers of the company does not in itself import

notice to a bank discounting the note, of which, also', they are directors and officers.

3. The mere fact that the officers of the bank knew, in a general way, that the company was in the habit of selling machinery and taking notes therefor, and then discounting the same at the bank, was not equivalent to actual notice of the infirmity attaching to this particular note.

APPEAL from the Circuit Court for *St. Croix* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

August 25, 1884, the J. I. Case Threshing-Machine Company, a corporation doing business at Racine, by its agent, sold to the defendant *P. F. Newell*, at Hammond, St. Croix county, a separator and steam-engine for threshing grain. At the same time, and in part consideration therefor, a note bearing that date, purporting to be executed by the said *P. F. Newell* and his brother, *M. J. Newell*, was made, wherein they promised to pay on or before November 15, 1885, to J. I. Case Threshing-Machine Company *or bearer* $800 at the bank of New Richmond, with interest at seven per cent. per annum from that date until paid. This action was commenced December 12, 1885, to recover the amount of the note, which the complaint alleged to have been duly sold, assigned, and transferred to the plaintiff, a banking corporation at Racine, by said company for a valuable consideration, before the same became due. The defendant *M. J. Newell* separately answered, and denied that he ever signed, executed, or delivered the note. The defendant *Peter F. Newell* separately answered, and admitted that he executed, signed and delivered the note. He also alleged, in effect, that he purchased the separator and steam-engine at the agreed price of $1,400, upon a warranty, upon which he relied, as to its good quality and efficiency; and that the machine was worthless, and that he had in consequence suffered loss greater in amount than such price of the ma-

chine; and that the plaintiff took and received the note with fair notice and knowledge of such breach and all the facts therein stated. After the close of the testimony, the court directed a verdict in favor of the defendants, which was returned accordingly. From the judgment entered thereon the plaintiff appeals.

For the appellant there was a brief by *H. C. Baker* and *J. B. Smith*, and oral argument by *Mr. Baker*. They contended, *inter alia*, that the burden was not upon the plaintiff of showing that it purchased the note for value before due. 1 Dan. on Neg. Inst. 596; 47 Wis. 433. Mere suspicion of defect of title, or of the existence of circumstances which would put a prudent man on inquiry, will not avail in defense. *Kelley v. Whitney*, 45 Wis. 110; *Brown v. Spofford*, 95 U. S. 474; *Goodman v. Simonds*, 20 How. 343; *Mitchell v. Catchings*, 23 Fed. Rep. 710; *Murray v. Lardner*, 2 Wall. 110; *Farrell v. Lovett*, 68 Me. 326. Notice to an officer of a bank, derived by him while not engaged officially in the business of the bank, cannot operate to the prejudice of the bank. *Nat. Bank v. Norton*, 1 Hill, 572; *Bank of U. S. v. Davis*, 2 id. 463; 87 N. Y. 291–307; 37 id. 320; *Mann v. Second Nat. Bank*, 34 Kan. 746. The placing of the amount for which the note was discounted to the credit of the Machine Company, and placing the note with the assets of the bank as a note discounted, made the bank a purchaser for value.

For the respondents there was a brief by *R. H. Start* and *L. P. Wetherby*, and oral argument by *Mr. Start*. To the point that the bank was not a *bona fide* purchaser for value, they cited Edwards on Bills & N. (1st ed.), 373; *Central Nat. Bank v. Valentine*, 18 Hun, 417; *Fulton Bank v. Phœnix Bank*, 1 Hall, 562; *Mann v. Second Nat. Bank*, 30 Kan. 412; *Platt v. Chapin*, 49 How. Pr. 318; *Dresser v. M. & I. R. C. Co.* 93 U. S. 92; *McBride v. Farmers' Bank*, 26 N. Y. 454; *Am. Exch. Bank v. Corliss*, 46 Barb. 19; *Clark*

*v. Ely*, 2 Sandf. Ch. 166; *West v. Am. Exchange Bank*, 44 Barb. 175; *Garland v. Salem Bank*, 9 Mass. 408; *Holcomb v. Wyckoff*, 35 N. J. Law, 36; *Todd v. Shelbourne*, 8 Hun, 510; *Clarke Nat. Bank v. Bank of Albion*, 52 Barb. 592; *Parish v. Stone*, 14 Pick. 208; *Jordan v. Nat. S. & L. Bank*, 74 N. Y. 473; *Williams v. Smith*, 2 Hill, 301; *Hubbard v. Chapin*, 2 Allen, 328.

CASSODAY, J. The name of *M. J. Newell* was signed to the note in question by his brother *Peter F.*, in the presence of the agent of the threshing-machine company, but apparently without any authority, express or implied. The most that is claimed is that when *Peter F.*, some months afterwards, told him he had so signed his name, he made no response. There is no claim that *M. J. Newell* was in business with his brother, nor that he had any interest in the purchase, nor that such agent was induced to believe or had any expectation of holding him liable in any other capacity, than as mere surety, solely by virtue of his name being signed as stated. Upon these admitted facts, it is evident that if the defense made by *Peter F. Newell*, as principal defendant, is available to him, then it is equally available to *M. J. Newell*, and the direction of the verdict was justifiable. For the purposes of this case, it must be assumed that had the action been brought by the company, instead of the bank, the defense to the note made by *Peter F. Newell*, under the breach of the warranty on the purchase of the machines, would have been a complete and perfect bar to any recovery. The only question for consideration, therefore, is whether it appears conclusively, from the undisputed evidence, that the plaintiff was not a *bona fide* purchaser of the note in suit for value before maturity. If it was not such *bona fide* purchaser, then the court was justified in directing a verdict in favor of both defendants; otherwise, the judgment must be reversed.

The testimony on this point is undisputed. It consists of the depositions of B. B. Northrup and J. I. Case, taken on the part of the plaintiff, and offered and read in evidence by the defendants. These depositions, so far as material here, are to the effect that during the times in question Northrup was cashier, and Case president, of the plaintiff bank; that during the same times Case was director and president, and Northrup a director, of the company; that during the same times M. B. Erskine was a stockholder and director in the company, and also in the bank; that during the same times the Baker estate was a stockholder in the company, and also in the bank, and was represented by Northrup, as trustee thereof; that during the same times Charles E. Erskine was a stockholder, director, and treasurer of the company, and also a stockholder in the bank; that during the same times the bank had a capital stock of $250,000, of which $79,000 were owned by stockholders of the company, and of that amount Case owned $33,000; that during the same times the company did its banking business at the bank, and the bank was in the habit of collecting and also discounting notes taken by the company for machinery manufactured and sold by it; that October 8, 1885, Charles E. Erskine, as such treasurer of the company, took said note to the bank to be discounted, and for that purpose left the same with Northrup, as such cashier, who received the same, and stamped it as "Bills Discounted," and credited the amount thereof, including the interest thereon to that date, in the then current account of the company with the bank; that on that day there stood to the credit of the company on the books of the bank in that account a balance of $42,095.55; that October 9, 1885, there stood to the credit of the company on the books of the bank in that account a balance of $52,614.47; that December 9, 1885, there stood to the credit of the company on the books of the bank in that account a balance of $147,911.86;

that December 12, 1885, there stood to the credit of the company on the books of the bank in that account a balance of $141,676.65; that Case had no personal knowledge of the note in suit, nor of any of the circumstances under which it was given, nor of either of the defendants, until long after the commencement of this action; that Northrup had no personal knowledge nor information concerning the sale and purchase of said machinery, nor said warranty, nor any of the circumstances under which said note was given, nor the consideration thereof, until after the note was so credited to the company on the books of the bank.

Upon these facts, can we hold that the plaintiff became a *bona fide* purchaser of the note for value, before maturity, by virtue of the amount thereof being credited to the company on the books of the bank, under the principles of the law-merchant, or must we hold the reverse? The acts of the agent in selling the machine and taking the note were, in legal effect, the acts of the company. This being so, the company must be presumed to have had constructive notice of the infirmity of the note in question. But it does not appear that, prior to its receipt of the note, any of the directors or officers of the bank had any actual knowledge or information respecting such infirmity. The mere fact that some of the directors and officers of the bank were also directors and officers of the company did not import to the bank the same constructive notice as was chargeable against the company. *Westfield Bank v. Cornen,* 37 N. Y. 320; *Atlantic State Bank v. Savery,* 82 N. Y. 291; *Mann v. Second Nat. Bank,* 34 Kan. 746. That fact of itself, therefore, was not such, in law, as to preclude the bank from becoming a *bona fide* purchaser of the note at the time of giving the credit, had it then actually paid the amount of the note. The mere fact that the officers of the bank knew, in a general way, that the company was in the habit of selling machinery, and taking notes therefor, and then discounting the

same at the bank, was not equivalent to actual notice of the infirmity attaching to this particular note. The ruling in *Gill v. Cubitt*, 3 Barn. & C. 466, to the effect that a mere suspicious circumstance would prevent a party from becoming a *bona fide* purchaser for value, seems to have been disapproved by later authorities, not only in this country but England. *Goodman v. Harvey*, 4 Adol. & E. 870; *Goodman v. Simonds*, 20 How. 367–369; *Murray v. Lardner*, 2 Wall. 110; *Brown v. Spafford*, 95 U. S. 478; *Farrell v. Lovett*, 68 Me. 326, 28 Am. Rep. 59; *Phelan v. Moss*, 67 Pa. St. 59; *Comstock v. Hannah*, 76 Ill. 530; *Fox v. Bank of Kansas City*, 30 Kan. 441. This is in harmony with the rulings of this court. *Kelley v. Whitney*, 45 Wis. 110; *Patterson v. Wright*, 64 Wis. 289. But here it conclusively appears that the bank did not pay the company the amount of the note at the time of giving the credit to the latter on its books, nor any part thereof; on the contrary, it was then owing the company over $40,000 on its bank-account. The taking of the note and giving the credit simply increased the amount of that indebtedness. The relation of the bank to the company continued to be that of debtor and creditor, as well after the receipt of the note as before. *Bank of the Republic v. Millard*, 10 Wall. 155; *Foley v. Hill*, 2 H. L. Cas. 28. Of course, there was an implied obligation on the part of the bank to honor the checks and drafts of the company to the extent of such indebtedness. *Ibid.* But there is not a particle of evidence that any such check or draft was ever given. On the contrary, we have the evidence of the officers of the bank to the effect that on the next day after the credit was given the indebtedness of the bank to the company had increased $10,000; and that on the day this suit was commenced such indebtedness was nearly $100,000 greater than when the note was received and the credit given. Whether the company checked the money out of the bank during the sixty intervening days

between the dates given, does not appear. If it did, the fact could easily have been stated by the officers of the bank in giving their depositions in the case. Not having been thus stated, and it appearing affirmatively that the plaintiff received the note on a mere credit, which continued to increase, we must assume that the credit given to the company on account of the note was not paid by the bank when this action was commenced. At the time of the commencement of the action the note was several weeks past due. Up to that time the bank had parted with nothing of value for it. The defense interposed was substantial, and went to the merits. It was sufficient to bar any recovery, unless the bank is to be regarded as a *bona fide* purchaser for value of the note, by reason of the mere discount and credit. Such being the facts, we are constrained to hold that the plaintiff's remedy was to tender the note back to the company, and cancel the credit. The right to do so is certainly sanctioned by courts of high authority. *Lancaster Co. Nat. Bank v. Huver*, 114 Pa. St. 216; *Dougherty v. Cent. Nat. Bank*, 93 Pa. St. 227; *Dresser v. M. & I. R. Co.* 93 U. S. 92; *Scott v. Ocean Bank*, 23 N. Y. 289; *Cent. Nat. Bank v. Valentine*, 18 Hun, 417; *Clarke Nat. Bank v. Bank of Albion*, 52 Barb. 592; *Platt v. Chapin*, 49 How. Pr. 318; *Payne v. Cutler*, 13 Wend. 605; *Fulton Bank v. Phœnix Bank*, 1 Hall, 562; *Mann v. Second Nat. Bank*, 30 Kan. 412; *Balbach v. Frelinghuysen*, 15 Fed. Rep. 675. These adjudications are to the effect that such mere discount and credit does not constitute a *bona fide* purchaser for value. To be such, the holder of the note must actually part with something of value for it. If, after such discount and credit, such holder receives notice of the infirmity of the note, he is thereby incapacitated from becoming such *bona fide* purchaser by any subsequent payment. We have not overlooked the remark of the late learned master of the rolls, cited by counsel, in *Ex parte Richdale*, L. R. 19 Ch. Div.

417. But that was under a bankrupt act, and the rights of third parties were involved. We must hold that the bank was not a *bona fide* purchaser for value so as to be protected against the infirmity of the note.

*By the Court.*— The judgment of the circuit court is affirmed.