NORTHFIELD NATIONAL BANK, Appellant, vs. ARNDT and
others, Respondents.

*May 6—June 20, 1907.*

*Sale of stallion: Warranty of identity: Breach: Evidence: Bills and*
*notes:* Bona fide *purchaser: Credit on bank account.*

1. In an action upon a note given in part payment for a stallion
   purchased on the faith of a warranty and representations that
   he was a certain imported, thoroughbred, pedigreed, and regis-
   tered stallion, proof of a discrepancy in marks and coloring be-
   tween the stallion and the picture and description accompany-
   ing the pedigree delivered with him did not show such a breach
   of warranty as would constitute a defense to the note, the stal-
   lion having been received and retained with full opportunity
   for examination and ascertainment of the facts.

2. A bank purchased a note from depositors, placing the amount
   paid therefor to their credit on account subject to check. The
   balances on such account varied, and at times it was overdrawn,
   before the maturity of the note. *Held,* that the fact that at
   various dates, including the date of purchase and the date of
   maturity of the note, the amount to the credit of the sellers ex-
   ceeded the amount due on the note, did not prevent the bank
   from being a *bona fide* purchaser for value.

APPEAL from a judgment and an order of the municipal
court for Marathon county: LOUIS MARCHETTI, Judge. *Re-
versed.*

This action was commenced September 5, 1905, to recover
$666.67 and interest thereon from May 1, 1904, being the
balance due on a note executed by the twelve defendants
March 6, 1903, which became due May 1, 1905. At the close
of the trial the court found as matters of fact, in effect, that
March 6, 1903, the defendants purchased of T. L. and J. L.
Delancey a certain stallion for the agreed price of $2,400;
that in consideration therefor the defendants executed and
delivered to the Delanceys three promissory notes, each dated
March 6, 1903, for $800, payable to the said Delanceys, one
of which was due May 1, 1904, another (the note in suit)

May 1, 1905, and the other May 1, 1906; (4) that as part
of said contract of sale the said Delanceys, in consideration
of the same, then and there represented and warranted the
said stallion to be a registered, thoroughbred, pedigreed stal-
lion, and represented and warranted said stallion as being the
Percheron stallion Reveillon, No. 31,960 (45,505), im-
ported from France; that the defendants herein relied upon
said warranty and believed said representations to be true,
and purchased said stallion and executed the said notes as
aforesaid, and that said stallion was the only consideration
for said notes; (5) that the said stallion was not the Percheron
stallion Reveillon as warranted and represented; (6) that
the defendants were induced by said false representations to
execute and deliver said notes, and that said defendants did
execute and deliver said notes in reliance upon said warranty
and said representations; (7) that, by reason of said stallion
not being thoroughbred, pedigreed, and registered as war-
ranted and represented, the said stallion was worth not to
exceed $300; (8) that the note of $800 due and payable
May 1, 1904, was fully paid by the defendants; (9) that by
reason of said breach of warranty the consideration for the
promissory note upon which this action is brought has en-
tirely failed; (10) that June 28, 1904, the plaintiff in this
action discounted said note and gave credit in the sum of
$650 upon the same to the said Delanceys upon their ac-
count with said plaintiff; that said Delanceys transacted busi-
ness with the plaintiff and had an account with the plaintiff
since June, 1901, and had such account with the plaintiff
December 14, 1905; (11) that June 28, 1904, when said
note in suit was so discounted, said plaintiff was indebted to
said Delanceys in the sum of $907.38; that the following day
said plaintiff was indebted to said Delanceys upon said ac-
count in the sum of $857.38; that April 20, 1905, said plaint-
iff was indebted to said Delanceys upon said account in the
sum of $2,638.88; that May 1, 1905, the plaintiff was in-

debted to said Delanceys upon said account in the sum of $3,161.63; (12) that the plaintiff received said note in suit by mere credit which continued to increase, and that the credit received by said Delanceys by reason óf the discount of said note was not checked out before maturity of the note, and the credit given to said Delanceys on account of said note in said suit was not paid out by the plaintiff when this action was commenced; (13) that the plaintiff is not a *bona fide* purchaser of said note for value before maturity.

As conclusions of law the court found, in effect, that the plaintiff is not a *bona fide* purchaser of said note before maturity; that the defendants are entitled to judgment that this action be dismissed, and for costs and disbursements of this action, and ordered judgment to be entered accordingly. Judgment was thereupon entered accordingly January 26, 1906.

Upon March 14, 1906, the plaintiff moved the trial court, upon the records and files thereof and the affidavits of the plaintiff's attorney and the cashier of the plaintiff bank, to set aside said judgment and for a new trial, which motion was by order of the court dated March 19, 1906, and entered March 21, 1906, denied. From that order and said judgment the plaintiff appealed to this court April 19, 1906.

For the appellant there were briefs by *Brown, Pradt & Genrich,* and oral argument by *F. W. Hall.*

For the respondents there was a brief by *Regner & Ringle,* and oral argument by *C. B. Bird.*

CASSODAY, C. J. 1. The defense made to the note is that the defendants were induced to purchase the stallion for which the note and two others were given by false representations and warranties made to the defendants by the Delanceys, to whom the notes were made payable. Such representations and warranties were found by the court and are set forth in the foregoing statement. They are, in substance;

what is contained in the "Certificate of Pedigree" issued by
the "American Percheron Horse Breeders' Association," and
under the seal thereof, and dated at Chicago, December 2,
1902, being three months prior to the purchase of the stal-
lion and the execution of the notes. That certificate was put
in evidence by the defendants. There is no proof that the
pedigree of the stallion was otherwise than therein stated.
From the description therein and the picture of a horse,
constituting a part of the same, it appears that the stallion
was black with a star on his head, and a white right hind foot
or leg, whereas it appears from the undisputed evidence that
the stallion in question had no star on the head and had no
white right hind foot or leg. And so the court finds that the
stallion is not as warranted and represented. Obviously the
question whether the stallion purchased was black, or had a
star on his head, or had a white hind foot or leg, were ascer-
tainable facts at the time of purchase. So whether the stal-
lion was imported from France, or registered, or pedigreed,
as stated, were all ascertainable facts, and hence provable at
the time of the trial, which took place nearly three years af-
ter the purchase. It has long been regarded as the settled
law of this state that "where the purchaser of goods, with
full knowledge, or with full opportunity for examination and
knowledge, of their defects, which are patent, and of the
fact that the place of delivery is not that required by the con-
tract, takes possession without notifying the vendor, at the
time of receiving them or within a reasonable time thereafter,
that they are not accepted as fulfilling the contract, he can-
not recoup damages for such defects or failure in an action
for the contract price." *Locke v. Williamson,* 40 Wis. 377;
*McClure v. Jefferson,* 85 Wis. 208, 213, 54 N. W. 777;
*J. Thompson Mfg. Co. v. Gunderson,* 106 Wis. 449, 453, 82
N. W. 299; *Kaiser v. Nummerdor,* 120 Wis. 234, 97 N. W.
932. But where the defects in the article purchased upon a
warranty are not open and palpable, but are unknown to the

purchaser when he received the same, the law is more liberal. *Morehouse v. Comstock,* 42 Wis. 626, 630; *Buffalo B. W. Co. v. Phillips,* 67 Wis. 129, 132, 134, 30 N. W. 295; *Larson v. Aultman & T. Co.* 86 Wis. 281, 288, 289, 56 N. W. 915. Under the authorities cited and the evidence in this case it is very certain that the defendants have no defense to the note based upon the difference in the color of the horse's head or his feet, or other obvious departure from the description given, even as against the payees named therein. True, the court found that the horse was not the stallion as warranted and represented. But we find no evidence to sustain such finding except as mentioned. Assuming for the purposes of this case that there is evidence of some breach of warranty as to pedigree or some other latent defect in the stallion, still we would not be authorized to affirm this judgment.

2. The trial court held that the plaintiff is not a *bona fide* purchaser of the note for value before maturity. This finding is challenged by the plaintiff. It is undisputed that the Delanceys, the payees of the three notes mentioned, kept an account with the plaintiff bank from June, 1901, to December 14, 1905, but they were not officers nor stockholders of the bank. It is undisputed that the first of the three notes became due May, 1, 1904, and was placed in the plaintiff bank as collateral and collected in full by the plaintiff on and before June 20, 1904, without any objection on the part of the defendants. The principal sum mentioned in the note in suit did not become due until May 1, 1905, but $133.33 of the principal, besides interest, had been paid thereon before June 28, 1904, on which day the plaintiff purchased that note for $650, and paid for the same by giving the Delanceys credit upon their bank account for that amount. Prior to June 28, 1904, the plaintiff held the note in suit as collateral security to the Delanceys' indebtedness to the bank, but after the payment of the first note of the series, June 20,

1904, as mentioned, the plaintiff by its president on June 28, 1904, purchased the note in suit outright and paid for it as mentioned. That was nearly ten months before that note became due. At the time of such purchase the plaintiff had no knowledge of any defense to the note. The plaintiff first learned that the makers of this note claimed to have a defense to the same in August or September, 1905, some three or four months after the maturity of the note. It is claimed on the part of the defendants that because there was a balance to the credit of the Delanceys at the plaintiff bank of more than the amount of the note in suit on the respective dates— June 28, 1904, June 29, 1904, April 20, 1905, May, 1, 1905—as found by the trial court, therefore the plaintiff did not purchase and pay for the note June 28, 1904. In other words, that the amount of the note stood to the credit of the Delanceys at the bank without being drawn out by them. But it is undisputed that such balances were subject to check and simply stated the balances on the Delanceys' account at the respective dates mentioned and had nothing to do with the note in suit, and that such balances varied from time to time and were at times overdrawn. The facts stated make it certain not only that the plaintiff purchased the note and placed the amount thereof to the credit of the Delanceys in their bank account, less the discount, June 28, 1904, but also that the Delanceys drew out of the bank to their own use the whole of the amount so placed to their credit prior to the time when the plaintiff first learned that the defendants claimed to have a defense to the note. Such being the facts, there can be no question but that the plaintiff became the owner and holder of the note in due course and in good faith and for value before maturity, and hence is entitled to the protection of the law merchant, even if the defendants might have successfully defended against the vendors of the stallion. Secs. 1676—22, 1676—27, 1676—29, Stats. (Supp. 1906).

What has been said makes it unnecessary to consider the application to set aside the judgment.

*By the Court.*—The order and judgment of the municipal court for Marathon county are both reversed, and the cause is remanded with direction to enter judgment in favor of the plaintiff and against the defendants for the balance remaining unpaid upon the note in suit.