CURRY, by guardian, Respondent, vs. WISCONSIN NATIONAL BANK, Appellant.

*April 5—April 23, 1912.*

*Banks and banking: Pledges: Negotiable paper: Holder in due course: Payment of consideration: Burden of proof: Larcenous pledge: Bankers' lien: Right and duty of setoff: Application of payments.*

1. In an action by the true owner to recover negotiable bonds pledged to a bank by one whose title was defective, the burden of proof is upon the defendant to show that it acquired the title in due course, which includes proof that it paid out the money agreed to be paid therefor or parted irrevocably with a valuable consideration.

2. As between the true owner of the negotiable paper in such a case and the pledgee, the right of the latter to enforce the security is governed by the same rules of law as the right of a purchaser or indorsee of like paper; but the titles acquired are different, since where the innocent purchaser obtains an absolute title the innocent pledgee, up to the time of sale of the pledge, acquires only a lien.

3. A reserve bank which credited its correspondent bank with the proceeds of a personal note given by an officer of the latter and secured by bonds of a customer which he had wrongfully taken, had in addition to the security of such bonds a bankers' lien

enforceable by setoff against the credit balance of said correspondent bank for the sum so wrongfully credited.

4. The pledgee bank did not in such case become a holder of the bonds in due course by the mere crediting of the proceeds of the note, nor by subsequent payment of drafts of the correspondent bank to an aggregate amount exceeding the entire credit balance at the time of the pledge, where such balance was augmented from time to time by additional deposits so that it never fell below the amount of such wrongful or mistaken credit.

5. The subsequent sending to and acceptance by the correspondent bank of a "reconcilement sheet" showing the debit and credit items appearing upon the books of the reserve bank, including the erroneous credit and the then existing credit balance, did not change the situation nor amount to an irrevocable application of the debit items to the payment of the credits thereon appearing.

6. The rule governing the presumption of application of payments will not be applied to work injustice.

7. Where, in the case stated, the pledgee bank, when it received notice of the defect in the pledgor's title to the bonds, had and at all times had had in its possession a credit balance due the correspondent bank in excess of the credit given on account of the wrongful pledge, it had the right, and it was a duty which it owed the true owner of the bonds, to revoke such credit and enforce its right of offset by cross-entry or otherwise.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

*Geo. D. Van Dyke,* for the appellant, contended, *inter alia,* that the bonds were negotiable instruments, and an innocent pledgee was a holder in due course; that giving credit to the Mineral Point bank by Allen's direction was equivalent to paying it the money. *Montrose Sav. Bank v. Claussen,* 137 Iowa, 73, 114 N. W. 547; *Sharpless v. Welsh,* 4 Dall. 279; *Little Wolf River Imp. Co. v. Jackson,* 66 Wis. 42, 27 N. W. 625; *Sterling v. Ryan,* 72 Wis. 36, 40, 37 N. W. 572; *Lane v. Magdeburg,* 81 Wis. 344, 348, 51 N. W. 562; *Nat. C. R. Co. v. Bonneville,* 119 Wis. 222, 96 N. W. 558; *King v. Kelley,* 51 Pa. St. 36; *Pollak Bros. v. Niall-Herin Co.* (Ga.) 72 S. E. 415. The money was in fact paid to the Mineral

Point bank because the sums paid out were applicable as payments upon the earlier credits.    *Fredonia Nat. Bank v. Tommel,* 131 Mich. 674, 92 N. W. 348; *Drovers' Nat. Bank v. Blue,* 110 Mich. 31, 67 N. W. 1105; *Dreilling v. First Nat. Bank,* 43 Kan. 197, 23 Pac. 94; *Fox v. Bank of Kansas City,* 30 Kan. 441, 1 Pac. 789; *City Deposit Bank v. Green,* 130 Iowa, 384, 106 N. W. 942; *Northfield Nat. Bank v. Arndt,* 132 Wis. 383, 388, 112 N. W. 451; *U. S. Nat. Bank v. McNair,* 114 N. C. 335, 19 S. E. 361; *Kehl v. Smith,* 87 Wis. 212, 58 N. W. 244; *Strong v. Bowes,* 102 Wis. 542, 78 N. W. 921.    The statement rendered and accepted between the banks was such an application by the parties.    *People v. Grant,* 139 Mich. 26, 102 N. W. 226; 2 Am. & Eng. Ency. of Law (2d ed.) 450, and note 2, 471; 30 Cyc. 1237–1239.

*T. M. Priestley* and *J. L. O'Connor,* for the respondent.

TIMLIN, J.    On or about November 1, 1905, the plaintiff left with the First National Bank of Mineral Point, Wisconsin, for safe keeping ten bonds of the United States, each payable to bearer and aggregating $5,000.    September 10, 1909, Phil Allen, Jr., vice-president of the bank last mentioned and active in its management, without authority express or implied from the plaintiff and under circumstances amounting to larceny, took these bonds and pledged them with the defendant bank as collateral security to Allen's personal note for $5,000, and ordered the avails of such note to be credited to the bank of Mineral Point.    The defendant bank was one of the correspondents or reserve agents of the Mineral Point bank and carried an account with the latter, and credited the latter with $5,000 in this account.    This credit was according to the mode of business between the banks, which was known to Allen, and the court found that the transaction was for the sole benefit of the Mineral Point bank.    This must mean that Allen, as officer of the latter bank, took such means to procure an additional credit of $5,000 for his bank in this account.

On September 10, 1909, before the discount mentioned, the credits of the Mineral Point bank in this account exceeded its debits by $20,343.84, and after the discount by $25,343.84. Between the date last mentioned and October 18, 1909, there were numerous debits and credits in this account to the Mineral Point bank, but during all this time the latter bank had an excess of credits which never fell below $11,000, and on October 18, 1909, its excess of credits was $15,242; but disregarding credits made after September 10, 1909, and considering only items of debit to the Mineral Point bank for moneys paid out to or for it by the defendant, the aggregate of these debit items exceeded $25,343.84. On September 30, 1909, what is known in banking as a reconcilement sheet was sent from defendant to the Mineral Point bank and accepted without objection by the latter. This began with the credit balance of the Mineral Point bank on September 1, 1909, gave the items of debit and credit between that date and September 30, 1909, including the avails of the $5,000 note in question, which was specially noted "Allen note discount," and balanced the account by an entry on the debit side, "Balance $22,819.30." This of course indicated an excess of credits of the Mineral Point bank to that amount.

On October 11, 1909, the Mineral Point bank was found to be insolvent and taken in charge by the United States officials under the national bank law. On October 18, 1909, this suit in equity was brought against the defendant to restrain it from selling the bonds and to recover possession thereof, and defendant was thereby fully informed of the plaintiff's ownership of the bonds and the wrongful and larcenous act of Allen by which they came in its possession. Defendant had, however, no knowledge or notice prior to this time of the title of the plaintiff or of any infirmity in Allen's title to the bonds, and took them in pledge in due course without anything to put the defendant upon inquiry. After this action was com-

menced the plaintiff became insane, hence her appearance by guardian.

Respondents argue in support of the judgment below that under such circumstances the defendant is not entitled to hold the bonds as against the plaintiff, because it had actually and prior to the commencement of this action and the consequent notice to it of plaintiff's title paid out nothing on account of the pledge and entered into no irrevocable agreement, and it was amply protected by the credits of the Mineral Point bank at all times.    The appellant contends that under the foregoing facts (a) the defendant, by crediting the avails of Allen's note to the Mineral Point bank as requested by Allen, with the consent of the Mineral Point bank, bound itself irrevocably to Allen and to the Mineral Point bank; (b) that the making and acceptance of the reconcilement sheet on September 30, 1909, was in effect an application of all charges against the Mineral Point bank therein contained upon the earlier credit items of that bank appearing therein, including the $5,000 item in question; (c) that in any event the law would apply the debit charges against the Mineral Point bank made after September 10, 1909, to the earlier items of its credit, and by this legal application of payments the defendant had paid out the avails of the note in question to or for the Mineral Point bank; (d) that if the defendant bank had a bankers' lien upon the general balance of the bank of Mineral Point against which it might have asserted a claim for $5,000 theretofore wrongfully credited, it was not bound to do so.

· We should first ascertain where the burden of proof lies, for there is no evidence showing that Allen paid a debt of his to the Mineral Point bank by this transaction, and the finding of the trial court that the transaction was for the sole benefit of the bank of Mineral Point at least suggests the contrary. It appearing clearly that the title of Allen, who negotiated the bonds, was defective, the burden of proof was upon the de-

fendant to show that it acquired the title in due course. This includes proof that it paid out the money agreed to be paid therefor or parted irrevocably with a valuable consideration. *Hodge v. Smith,* 130 Wis. 326, 110 N. W. 192. Next we must keep in mind, for the purpose of applying a cognate rule of law, that the defendant was not a purchaser of the bonds. Many cases are cited which arose between the purchaser and the maker of negotiable paper, but they do not cover the whole question presented by a case like this. The law of pledge, with reference to the negotiable character of the instrument and with reference to the right of an innocent pledgee to enforce his security, is identical with the law of purchaser or indorsee of like paper. But the title which the innocent pledgee acquires is not identical with that acquired by an innocent purchaser. The former acquires a perfect lien, but always and up to the time of sale of the pledge only a lien; the latter acquires an absolute title. We are here speaking of the law as between the owner of the pledge and the pledgee. The case, therefore, is one in which the defendant bank had credited to the bank of Mineral Point an item of $5,000 on account of a note executed for the bank of Mineral Point and in its behalf by one of its officers which he secured by a pledge of negotiable bonds left with the Mineral Point bank for safe keeping, but which such officer surreptitiously took and pledged to secure this note. The defendant bank had these pledged bonds as security and it also had a bankers' lien enforceable by setoff against the credit balance of the bank of Mineral Point for any sum theretofore wrongfully or mistakenly credited thereon. 1 Morse, Banks & Banking (4th ed.) ch. XXII.

"If the depositor becomes bankrupt his deposit becomes security for the payment of his debt to the bank. If this debt be contingent in character, or if it be a claim for unliquidated damages arising out of a contract, then the bank may retain possession of the deposit until such time as the probable in-

debtedness shall be ascertained, when the deposit may be set off against it." Id. § 337 and cases.

A mere credit to the indorser in his account with the bank for the price of a note purchased from him by the bank does not make the bank a purchaser in due course and for value, because it may, upon learning that a defense exists against the note, "tender the note back to the company and cancel the credit." *Manufacturers' Nat. Bank v. Newell,* 71 Wis. 309, 37 N. W. 420. Neither the equitable rule relating to the application of payments which applies payments made generally upon the earlier debit items of the account, except where such application would be unjust or inequitable, nor the implication of application of credits upon the older items of debit arising from the making and acceptance of the reconcilement sheet, affected or impaired the power of the defendant bank, at all times prior to and on October 18, 1909, to withdraw this credit from the bank of Mineral Point and so protect itself. If we assume as most favorable to the defendant that the instant case presented a situation where ordinarily and up to October 18, 1909, such theoretical application would be made, it was not irrevocable. The defendant bank could not, we think, be required to resort to a legal action to protect the plaintiff. But that is not what is expected or required. The defendant is here invoking the rule governing the legal application of payments to qualify itself to take the plaintiff's property as an innocent pledgee in due course. The rule refuses to lend its aid under such circumstances, where the defendant pledgee at the time it learned of plaintiff's title to the bonds had still in its hands, subject to its control and power of disposition, the credit which it gave the bank of Mineral Point for the avails of the Allen note and the pledged bonds. The defendant had as ample power to revoke any application of payments which it or the law had theretofore made as had the purchaser in *Manufacturers' Nat. Bank v. Newell, supra.* The rule governing the presumption of ap-

plication of payments will not be applied to work injustice, and the reconcilement sheet was in itself no actual application of payments upon particular items, but required, to give it the effect contended for by appellant, the aid of this same equitable rule.

We are of opinion that where a pledgee acquires negotiable securities in due course from a pledgor who has no title and who in pledge makes a larcenous disposition of the securities, and the pledgee has advanced money on the pledge only by crediting, at the request of the pledgor, such moneys in the account of another for whose benefit the pledge was made and the money borrowed; and a credit exceeding this amount remains continually in such account from the time of pledge to the time of discovery by the pledgee of pledgor's want of title and of the rights of the true owner, and where the pledgee is given by law a lien against such credit balance enforceable by offset, and has the right at all times up to such discovery to revoke the credit, he is bound to make such offset by withdrawing this credit by cross-entry or otherwise. This, we think, is supported by *Hazard v. Fiske*, 83 N. Y. 287; *Smith v. Savin*, 141 N. Y. 315, 36 N. E. 338; *Le Marchant v. Moore*, 150 N. Y. 209, 44 N. E. 770; *Manufacturers' Nat. Bank v. Newell, supra;* and it is not in conflict with *Strong v. Bowes*, 102 Wis. 542, 78 N. W. 921. In the latter case notice to the pledgee came too late to enable him to protect himself.

From what has been said, it is apparent that we do not consider the defendant bank, by its transaction with Allen, bound irrevocably to Allen or to the bank of Mineral Point to continue its credit in the account of the latter. When the defendant bank agreed with Allen to credit the avails of Allen's note and the collateral bonds to the bank of Mineral Point, such agreement was necessarily influenced and affected by the law relating to dealings between banks, and subject to the right of the defendant bank to revoke that credit whenever neces-

sary for its protection and to set off against any credit balance at any time found due to the bank of Mineral Point any demand existing in favor of the defendant bank and against the bank of Mineral Point.

It follows that the judgment of the circuit court should be affirmed.

*By the Court.*—Judgment affirmed.