First National Bank of Appleton, Respondent, vs. Court, Appellant.

*January 16—March 11, 1924.*

*Bills and notes: Holder in due course: Bank giving deposit credit for note: When bank becomes due-course holder: Presumption: Fraud in origin of note: Trial: Prima facie case: Proof of notice of infirmity in note.*

1. A bank is not a holder in due course of a negotiable instrument in its possession unless it has honored and paid checks of a depositor of the note, or has given value therefor, or has assumed an obligation of the depositor on account of the discount of the note. p. 206.
2. Upon the discounting and depositing to depositor's credit of a note of a third person, the relation of debtor and creditor is created between the bank and the depositor, and so long as the relation continues and the deposit remains the bank is held subject to the equities of prior parties, notwithstanding the note was taken before maturity and without notice of infirmities. p. 206.
3. Where the note proves valueless or the bank receives notice of infirmity therein, it may return the note to the depositor and debit his account with the amount thereof. p. 207.
4. If a depositor, after discounting a note of a third person and receiving deposit credit, subsequently withdraws from his checking account an amount equal to his account at the time of the deposit, including the proceeds of the note, the maxim "The first money in is the first money out" applies and the

bank becomes a holder for value of the note, although there may remain, between the date of the discount and the maturity of the note, a balance in excess of the amount of the note. p. 209.

5. Evidence that the bank took a note deposited by a corporation in the usual course of business before maturity; that there were no irregularities on its face; that it had no further dealings with the depositor in relation to the note; and that although the bank officials knew that the depositor was selling shares of its corporate stock and presumed that the note was given for the purchase price of some of the stock they did not investigate the title of the depositor's broker in the note and had never seen the prospectus advertising the stock, made a *prima facie* case that it had no knowledge of infirmities in the note and that it paid value therefor.   p. 212.

6. The presumption that the holder of a note purchased it in good faith without notice of fraud or illegality continues until overcome by rebutting evidence.   p. 213.

7. Where plaintiff made a *prima facie* case, proof of fraud in securing the note will not defeat it unless notice thereof is brought home to plaintiff; and it was not error for the court to rule that evidence of fraud would not be admitted until there was some evidence that plaintiff did not pay value or had notice of the fraud.   p. 214.

APPEAL from a judgment of the municipal court of Outagamie county: ALBERT M. SPENCER, Judge.   *Affirmed.*

In the year 1921 the N. Simon Cheese Company, a corporation, issued a large amount of common stock, and employed J. F. Havorka & Company, Incorporated, engaged in the stock-brokerage business, to sell the same.   On the 16th day of August, 1921, Havorka & Company sold a small block of said stock to the defendant, and took from him his promissory note, payable to it, for the sum of $1,000, due six months after date, with interest at the rate of seven per cent. per annum.   Havorka & Company thereupon indorsed this note to the N. Simon Cheese Company, a corporation, without recourse.   The cheese company, located in Appleton, Wisconsin, for many years prior to the 16th day of August, 1921, had been a customer of the plaintiff bank, had an open checking account with such bank, and during

such period transacted a large amount of business. On
August 19, 1921, being three days after the execution of
the said note, the cheese company indorsed the note to the
plaintiff, and the plaintiff thereupon gave the cheese com-
pany credit on its open checking account. On the date of
the indorsement of the note to the plaintiff, the cheese com-
pany, at the opening of business on that day, had to its
credit in its account with the plaintiff bank a balance of
$20,739.23. On the same day the bank honored and paid
checks of the cheese company aggregating $90,959.50, leav-
ing a balance at the close of business on that day to the
credit of the cheese company of $14,289.20. This would
indicate that on said last named date the cheese company
had made sufficient deposits to the credit of its account in
the bank to account for such balance at the close of such day.

The evidence also shows that defendant's note was taken
by the bank in the usual course of business, and that there-
after it had no further dealing with the cheese company
with respect to this note, and that it had no conversation,
until after the maturity of the note, with any of its officers
or agents on account of such note; that the officers of the
bank had knowledge of the sale of stock by the cheese com-
pany, and that they presumed such note was given in pay-
ment of the purchase price of stock. It also appears that
the president of the bank, who represented the same at the
time of the discount of the note, had not prior thereto been
acquainted with Havorka & Company, and that he had made
no investigation to determine what right Havorka & Com-
pany had in and to the note.

In his answer the defendant alleges that the sale of the
shares of stock to the defendant by Havorka & Company
was induced by various alleged false and fraudulent repre-
sentations, and that, relying upon such representations, such
note was executed; and that the bank had notice of such
fraud; and that it had not become the holder of the note in
due course.

At the conclusion of the trial, upon motion of the plaintiff, the court directed a verdict in favor of the plaintiff for the full amount of the principal and interest of the note, together with costs, whereupon judgment was entered in plaintiff's favor accordingly, from which judgment the defendant has taken this appeal. Further facts will appear in the opinion.

C. G. *Cannon* of Appleton, for the appellant.

For the respondent there was a brief by *James H. McGillan* of Green Bay, of counsel, and *Julius P. Frank* of Appleton, attorney, and oral argument by *Mr. McGillan.*

DOERFLER, J. A vital, concrete proposition here presented is whether a bank, in discounting a note of one of its depositors and crediting the amount to the checking account of such depositor, becomes the *bona fide* owner of such note for value, where it appears from the evidence that on the date of the discount the depositor added largely to his balance by additional deposits, but withdrew from his account, by checks actually paid, an amount sufficiently large so as to leave to his credit at the close of business on that day a sum considerably less than the amount to his credit at the opening of business on that day, but leaving a balance at the close of business largely in excess of the amount credited by the discount of the note.

It has been firmly established in this state and throughout the country that a bank is not a holder in due course of a negotiable instrument in its possession unless it has honored and paid checks of the depositor, or has given value for the note, or has assumed an obligation of the depositor on account of the discount of the note. Under such circumstances the mere relationship of debtor and creditor is created between the bank and the depositor, and so long as that relation continues and the deposit is not drawn out the bank is held subject to the equities of the prior parties, notwithstanding the note was taken before maturity and without notice of any infirmity therein.

In *Mann v. Second Nat. Bank,* 30 Kan. 412, 1 Pac. 579, the court said:

"The proposition rests on the plainest principles of justice, and in no manner impairs the desired negotiability and security of commercial paper. Whenever the holder is a *bona fide* holder he has a right to claim protection, but protection only to the extent he has lost or been injured by the acquisition of the paper. If he has parted with value, either by a cash payment or the cancellation of a debt, or giving time on a debt, or in any other manner, to that extent he has a right to claim protection; but when he has parted with nothing, there is nothing to protect. The mere promise to pay is no payment. He may rightfully say to the party from whom he purchased: 'The paper you have given me is valueless and therefore I am under no obligations to pay;' and if the paper be in fact valueless, payment cannot be compelled."

Such, in substance, also is the holding of this court in *Manufacturers' Nat. Bank v. Newell,* 71 Wis. 309, 316, 37 N. W. 420; *Hodge v. Smith,* 130 Wis. 326, 334, 110 N. W. 192; *Northfield Nat. Bank v. Arndt,* 132 Wis. 383, 112 N. W. 451; *Curry v. Wis. Nat. Bank,* 149 Wis. 413, 136 N. W. 549. This doctrine is generally accepted in the state courts outside of Wisconsin and in the federal courts.

When the note proves valueless or the bank receives notice of infirmity of the note, it can return the note to the depositor and debit his account for the amount thereof.

In the case of *Manufacturers' Nat. Bank v. Newell, supra,* the bank discounted the note for a company and credited it with the amount, and such credit subsequently increased so that at the time of suit on the note the bank had parted with nothing of value for it. It was held that the bank was not a *bona fide* purchaser for value. In the opinion in that case the following appears:

"But here it conclusively appears that the bank did not pay the company the amount of the note at the time of giving the credit to the latter on its books, nor any part thereof; on the contrary, it was then owing the company over $40,000 on its bank account. The taking of the note and giving the credit simply increased the amount of that indebtedness.

. . . Of course there was an implied obligation on the part of the bank to honor the checks and drafts of the company to the extent of such indebtedness.  But there is not a particle of evidence that any such check or draft was ever given."

It will be noted that in the *Newell Case* there was no evidence in the record to show that the amount credited had at any time been to any extent depleted.  The same doctrine is also held in *Hodge v. Smith*, 130 Wis. 326, 110 N. W. 192.

In the case of *Northfield Nat. Bank v. Arndt*, 132 Wis. 383, 112 N. W. 451, the following appears under the second head-note of the case:

"A bank purchased a note from depositors, placing the amount paid therefor to their credit on account subject to check.  The balances on such account varied and at times it was overdrawn before the maturity of the note.  *Held*, that the fact that at various dates, including the date of purchase and the date of maturity of the note, the amount to the credit of the sellers exceeded the amount due on the note, did not prevent the bank from being a *bona fide* purchaser for value."

It will thus appear from the *Arndt Case* that notwithstanding the fact that at the time of the purchase of the note and at the time of the maturity thereof the depositor had to his credit an amount in excess of the amount of the note, such fact will not prevent the bank from becoming a purchaser for value, where it appears that between the dates, at times, the account was overdrawn.  The facts in the *Arndt Case* are substantially like those in the instant case, excepting only in the *Arndt Case* there were periods between the execution of the note and its maturity when the depositor had drawn out from his account his entire balance, while in the instant case, at the close of business on the day of the deposit, the depositor had checked out an amount in excess of his deposits on that day, leaving a balance of about $6,000 less than the amount to the credit of the depositor at the opening of business on that day.

First Nat. Bank v. Court, 183 Wis. 203.

It also appears from the evidence in the instant case that on a number of dates between the 19th day of August, 1921, and the 16th day of February, 1922, when the note matured, there was a constant balance to the credit of the depositor in excess of the amount of this note, excepting only that on the date of maturity the deposit account had been depleted to $899.15. And it also appears that upon numerous dates in the interim above referred to, the actual balance was considerably less than the amount to the credit of the depositor on the opening of business on August 19, 1921.

There is thus raised in this case the question whether, after the discount of a note, the amount being placed to the credit of the depositor in his checking account in the bank, and he subsequently withdraws from such checking account an amount equal to his credit at the time of the deposit, and including the amount of the discounted note, the bank becomes a *bona fide* holder for value of the note, notwithstanding there may remain thereafter at all times between the date of the discount of the note and the maturity of the note a balance in excess of the amount of the note.

We have examined the cases, the text-books, and the reference books upon this subject, and we find the rule firmly established by overwhelming authority that in such case the bank becomes a holder for value of the note. Under such circumstances the authorities hold that the doctrine of the presumption of the application of payments applies, the maxim being stated as follows: "The first money in is the first money out." This rule is approved in an annotation to 6 A. L. R. p. 262, where numerous cases in various jurisdictions are cited, and such note also cites the case of *Northfield Nat. Bank v. Arndt,* 132 Wis. 383, 112 N. W. 451.

The rule of the presumption of the application of payments is founded upon principles of equity and justice. Where it can be said that the bank still has in its possession the proceeds of the discounted note, and where an infirmity

appears in the note on account of fraud of which the bank has notice, and where the bank is in a position where by cross-entry or setoff it can make itself whole and also protect such maker, the money so deposited should be applicable for the benefit of such bank and maker. Such a ruling redounds to the benefit of the defrauded party and works no injury to the bank. Where a note is executed to a depositor and the note is indorsed to a bank and the amount credited to the depositor's account, the rights of the maker are referable to the amount so credited, and vanish when the bank honors the checks of the depositor whereby the amount is withdrawn. Upon the transfer to the bank by the depositor of the notes of subsequent makers there springs up and exists in each of such makers a similar right, which is defeated when the respective amounts are drawn out by the depositor. So that each maker is accorded a special right or interest in the fund created by his note, and it is upon this basis only that substantial justice can be done.

In approving such holdings in foreign jurisdictions we have not overlooked the decisions in the cases of *Curry v. Wis. Nat. Bank,* 149 Wis. 413, 136 N. W. 549, and *Port Washington State Bank v. Polonia P. Co.* 180 Wis. 71, 192 N. W. 472. What is said in the latter case is based largely upon the holding in the *Curry Case.* In the *Curry Case* one of the officers of a bank at Mineral Point took certain United States bonds of the face value of $5,000 under circumstances amounting to larceny, and pledged them with the defendant bank, a reserve bank of the Mineral Point bank, as collateral security for the officer's personal note for $5,000, and directed that the avails of such note be credited to the bank of Mineral Point. In paragraph 4 of the head-notes it is said:

"The pledgee bank did not in such case become a holder of the bonds in due course by the mere crediting of the proceeds of the note, nor by subsequent payment of drafts of the correspondent bank to an aggregate amount exceed-

ing the entire credit balance at the time of the pledge, where such balance was augmented from time to time by additional deposits so that it never fell below the amount of such wrongful or mistaken credit."

This was an action by the owner of the bonds against the defendant bank, and not an action in which the maker of the note was a party. The decision in that case was largely based upon the well-established doctrine that the rule governing the presumption of application of payments will not be applied to work injustice. In the opinion it is said:

"We are of the opinion that where a pledgee acquires negotiable securities in due course from a pledgor who has no title and who in pledge makes a larcenous disposition of the securities, and the pledgee has advanced money on the pledge only by crediting, at the request of the pledgor, such moneys in the account of another for whose benefit the pledge was made and the money borrowed; and a credit exceeding this amount remains continually in such account from the time of pledge to the time of discovery by the pledgee of pledgor's want of title and of the rights of the true owner, and where the pledgee is given by law a lien against such credit balance enforceable by offset, and has the right at all times up to such discovery to revoke the credit, he is bound to make such offset by withdrawing this credit by cross-entry or otherwise."

The opinion also cites 1 Morse, Banks & Banking (4th ed.) ch. XXII, which declares the doctrine of a banker's lien between bankers according to the custom of banks.

So that it appears quite clear that the ruling in the *Curry Case* was based first upon the right of offset or cross-entry which exists in the law of banking, and second, upon the doctrine that the presumption of application of payments does not apply where it will work injustice.

In the *Port Washington Bank Case* (180 Wis. 71, 192 N. W. 472) it is said in the opinion:

"From the time the note was taken by the plaintiff bank and an appropriate credit made upon the deposit account of

the Laboratories and up to and after the commencement of this action, that account was constantly in excess of the face of the note, so that at all such times the plaintiff was in position to and had the legal right to charge the amount of such note with then accrued interest against such deposit and return the note to its depositor, the transferor. Such being the situation, the bank was not a holder in due course within the statute."

This opinion seems to be in harmony with the doctrine laid down in the *Newell, Hodge,* and *Arndt Cases;* but whether so in harmony or not, our holding herewith is in accordance with those cases which affirm the doctrine of the presumption of application of payments.

Defendant's counsel argues that, in view of the infirmities in the note alleged in the answer, the burden of proof rested upon the plaintiff, in the first instance, to show that it had no notice or knowledge of such infirmities up to the time that it paid value for such note. It appears from the evidence that the president of the bank took the note in the usual course of business; that there were no irregularities on the face of the note; that up to the time of maturity the bank had no further dealings with the cheese company in relation to the note, and that no further talk was had about it; that the bank officers knew that the cheese company was selling stock, and presumed that the note was given for the purchase price of some of the stock; that the bank officials had never seen a prospectus advertising the sale of this stock; and that the president of the bank who officiated when the note was discounted did not investigate what right or title Havorka & Company had in the note. It having been shown that the bank became the purchaser for value before maturity, and in view of plaintiff's evidence above set forth, we are satisfied that the plaintiff established a *prima facie* case.

It was held in *Market & F. Nat. Bank v. Sargeant,* 85 Me. 349, 27 Atl. 192, that "Proof that the holder before maturity paid full value for the instrument sued upon

makes out a *prima facie* case of *bona fides.*" See, also, *Henry v. Sneed,* 99 Mo. 407, 422, 12 S. W. 663.

Such holding quoted from in the Maine case was expressly adopted by this court in the case of *Hodge v. Smith,* 130 Wis. 326, 337, 110 N. W. 192; but in the *Hodge Case* it is also said:

"Of course proof of payment is not conclusive, it only makes out, as indicated, a *prima facie* case; one subject to be rebutted by the adverse party."

On the trial the defendant attempted and offered to prove that the note was procured by Havorka & Company by fraud. By way of objection to this evidence plaintiff's counsel stated:

"We will object to the reception of any testimony as to the transaction out of which this note arises unless the defendant first produces some slight testimony that would warrant the court in using that testimony as competent against this plaintiff. In other words, some testimony to show that plaintiffs are not on this note in due course. This testimony of the transaction as to who is the owner is absolutely immaterial to the case unless bad faith in the bank is shown."

This objection was sustained by the court. The defendant at no time during the trial submitted evidence tending to prove notice of the fraud to the plaintiff; nor was there any evidence introduced to disprove that the plaintiff had paid value for this note. Therefore the presumption that it purchased in good faith without notice of fraud or illegality continued until overcome by rebutting evidence.

In 3 Ruling Case Law, 1040, the rule is stated as follows:

"This presumption exists, it is said, because it is not likely that he [the plaintiff] would give full value for a note which he knew or believed to be fraudulent, taking upon himself the hazard attending it; and because it would be difficult to prove his good faith in any better way than that he gave value for it."

In the instant 'case plaintiff not only proved that it gave value for the note, but it disclosed the facts and circumstances under which it acquired the paper. While the burden of proof rests upon the plaintiff to make out a *prima facie* case, and while such burden does not shift, it would appear but logical that, even assuming that the fraud was amply established on the part of the defendant, nevertheless the proof of such fraud alone would not defeat the plaintiff's *prima facie* case unless notice thereof were brought home to the plaintiff. What the court intended by its ruling was to require on the part of the defendant some evidence showing either that the plaintiff as a matter of fact did not pay value or that it had notice of the fraud. The effect of the court's ruling was merely to regulate the order of proof, which lies in the discretion of the court. Not having complied with the court's ruling, we cannot say that the court was wrong in holding as it did. Had the defendant shown in the evidence, for instance, that the plaintiff purchased this note for a sum considerably less than the face value of the note, that would have been an incident of bad faith and would have created a jury issue. No such proof or similar proof was offered.

We therefore conclude that the court properly directed a verdict in plaintiff's favor.

*By the Court.*—Judgment affirmed.