44

First National Bank of Waukesha, Respondent, v.
Motors Acceptance Corporation, Appellant.

*October 31—November 28, 1961.*

For the appellant there were briefs by *Blakely, Long, Grutzner & Jaeckle* of Beloit, and oral argument by *J. Richard Long.*

For the respondent there was a brief by *Lowry, Hunter & Tikalsky* of Waukesha, and oral argument by *Donald J. Tikalsky.*

MARTIN, C. J. The following stipulations under ch. 116, Stats. (N. I. L.), were made by the parties: The 10 notes given Sauer by defendant, and plaintiff's draft, were all negotiable instruments under sec. 116.02, Stats. Sauer pro-

cured the 10 notes from defendant by fraud, thus rendering his title to the notes defective under sec. 116.60. Plaintiff met all the requirements of a holder in due course under sec. 116.57. There was no stipulation with respect to La Salle National's status as a holder in plaintiff's draft. But, by virtue of sec. 116.64, La Salle National "is deemed *prima facie* to be a holder in due course."

Plaintiff contends that because it is a holder in due course under sec. 116.57, Stats., it is entitled to recover the amount of the notes from defendant by virtue of sec. 116.62. That statute provides:

"A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon except as provided in cases where the title of the person negotiating such instrument is void under the provision of sec. 116.60."

On the other hand, defendant contends that even though plaintiff is a holder in due course within sec. 116.57, Stats., its rights as such are modified by sec. 116.59. This statute provides:

"Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid therefor the full amount agreed to be paid he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

Thus, because plaintiff ordered payment of its draft after it learned of Sauer's fraud, it cannot recover on defendant's notes.

The issue centers on the meaning of the phrase in sec. 116.59, Stats., "paid therefor the full amount agreed to be paid." Plaintiff contends that this phrase means completion of the transaction at hand, *i.e.*, the exchange of 10 notes for plaintiff's draft. Defendant contends that the phrase

means actual cash payment. The trial court held that it means completion of the transaction at hand.

This issue has never been squarely before this court. Defendant cites *Hodge v. Smith* (1907), 130 Wis. 326, 110 N. W. 192, and *First Nat. Bank v. Court* (1924), 183 Wis. 203, 197 N. W. 798, in support of its argument. But they are distinguishable from the instant case. Both cases involved the "bank-deposit rule."

This general rule covers the situation where a bank accepts negotiable instruments from a depositor and credits his account with the proceeds. If the bank, after learning of the depositor's defective title to the instruments, allows him to draw further on his account, then sec. 116.59, Stats., precludes the bank from collecting on the instruments. This is because the mere crediting of a depositor's account with the amount of the instrument is not by itself payment under that section. We explained the equitableness of this rule in the *Court Case* (p. 207) :

"When the note proves valueless or the bank receives notice of infirmity of the note, it can return the note to the depositor and debit his account for the amount thereof."

Clearly, the equities are not the same where the bank gives its own negotiable instrument in exchange for another. For now the bank's instrument may get into the hands of a holder in due course. See Anno. 59 A. L. R. (2d) 1173, and Britton, Bills and Notes, p. 402.

There is authority which supports the defendant's argument that the phrase in sec. 116.59, Stats., "paid therefor the full amount agreed to be paid," means actual cash payment. *Jerke v. Delmont State Bank* (1929), 54 S. D. 446, 223 N. W. 585. See also Anno. 69 A. L. R. 408, 412.

We prefer, however, to adopt the construction that the quoted phrase means completion of the transaction at hand, which in the instant case was when plaintiff exchanged its

draft for the 10 notes. In *People's Savings Bank v. Smith* (1930), 210 Iowa 136, 143, 144, 230 N. W. 565, 69 A. L. R. 399, the bank accepted negotiable notes which had been procured by fraud, and gave in exchange a negotiable certificate of deposit. This certificate was in turn negotiated to a third party. Six months later, after learning of the fraud, the bank paid the certificate. The court held that the giving of the certificate constituted payment on the part of the bank, and its rights as a holder in due course of the notes were not affected by sec. 54 (sec. 116.59, Stats.) of the N. I. L. In discussing the application of sec. 54 the court quoted from *Pennoyer v. Dubois State Bank* (1926), 35 Wyo. 319, 327, 328, 249 Pac. 795, 797:

" 'Sec. 54 is intended to define cases in which the holder must protect himself by refusing to make further payment. . . . *Dresser v. Missouri & I. E. Const. Co.* [93 U. S. 92] . . . was a clear case for application of the rule. The plaintiff had bought notes made by defendant aggregating $10,000. Plaintiff paid on acquiring the notes $500, and promised orally to pay the balance. Before he had paid anything more than $500, he received notice that the notes had been obtained from the maker by fraud. . . . It was held that plaintiff could recover from the maker only $500. This was because he could have protected himself, after notice of fraud, by refusing to make further payment. . . .' "

In the instant case, sec. 116.59, Stats., would be applicable only if the plaintiff had received notice of the fraud before it had finished the particular settlement agreed upon for the exchange of the 10 notes. Here the settlement was complete when plaintiff gave its bank draft. Notice of the fraud came after this event.

Beutel, Brannan's Negotiable Instrument Law (6th ed.), pp. 588–596, contains an excellent discussion on the application of sec. 54 (sec. 116.59, Stats.) of the N. I. L. The author points out that secs. 25 (sec. 116.30, Stats.), 26

(sec. 116.31, Stats.), and 27 (sec. 116.32, Stats.) of the N. I. L. clearly adopt the view that a credit transaction may be complete payment. Thus, sec. 54 (sec. 116.59, Stats.) can only be reconciled with these prior sections by construing the phrase "paid therefor the full amount agreed to be paid" to mean completion of the transaction at hand. For further citations see Anno. 69 A. L. R. 408, 409.

A large amount of the business in this country is transacted on credit. As the trial court noted in its memorandum decision, one of the purposes of the N. I. L. is to promote the free flow of credit. To accomplish this the integrity of the instruments of credit, like bank drafts, must be maintained. Bank drafts may be considered the equivalent of money. See 7 Zollmann, Banks and Banking (perm. ed.), p. 228, sec. 4721.

Plaintiff here learned of the fraud after it had "paid" for the 10 notes. Thus, sec. 116.59, Stats., does not preclude it from recovering on the notes.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting*). While I am in accord with the principles of law enunciated in the majority opinion I disagree with their application to the instant case. Here, plaintiff bank stopped payment on its own draft on September 18th, after being apprised of the fraud, and did not lift this stop-payment order until October 15th. I would hold that such stopping of payment had the effect of reversing the prior completed transaction, whereby plaintiff had exchanged its own draft drawn on the First National Bank of Chicago for defendant's drafts, so as to make applicable sec. 116.59, Stats. This statute provides:

"Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid therefor the full amount agreed to be paid he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

After having stopped payment on its own draft, such draft should only be construed as constituting "payment" within the meaning of sec. 116.59, Stats., if it was held by a holder in due course at the time payment was stopped. Such a determination would in no wise disrupt ordinary commercial banking practices and might result in protecting the defrauded party against loss.

For example, in the instant case if La Salle National had only granted a deposit credit to S & S Motors, Inc., or to Sauer for plaintiff's draft at the time plaintiff stopped payment, La Salle National would not have been a holder in due course because it had not parted with value under our decisions in *Hodge v. Smith* (1907), 130 Wis. 326, 110 N. W. 192, and *First Nat. Bank v. Court* (1924), 183 Wis. 203, 197 N. W. 798. Once plaintiff stopped payment on its draft it thereafter paid the same at its peril if such draft was not in the hands of a holder in due course at the time of such stoppage of payment.

I would reverse and remand for determination of the issue of whether La Salle National was a holder in due course of plaintiff's draft at the time payment was stopped thereon.